UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHRISTINE HAZEL S. CRUZ,

                    Plaintiff,

  - against -

G-STAR INC., G-STAR USA LLC, and G-STAR RAW C.V.,

                    Defendants.

Case No. 1:17-cv-07685 (PGG)(OTW)

**DECLARATION OF KATHLEEN M. KUNDAR, ESQ.
IN OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS**

    I, Kathleen M. Kundar, pursuant to 28 U.S.C. § 1746, declare under the penalty of perjury as follows:

    1.  I am of counsel with the firm of Fox Horan & Camerini LLP, attorneys in this litigation for Defendants G-Star Inc. and G-Star USA LLC (collectively "Defendants"). The third company named in the caption, G-Star Raw C.V., a Dutch entity, was never served with process in this action.

    2.  I have personal knowledge of the facts stated herein except where stated to be based on documents or other information. I make this declaration in opposition to Plaintiff's motion for discovery sanctions pursuant to Fed. R. Civ. P. 37(e).

    3.  Defendants are entities formed under Delaware law. Effective on January 1, 2013, G-Star USA LLC was merged into G-Star Inc. Both companies were engaged in the wholesale and retail distribution and sale of denim oriented clothing at an office at 599 Broadway in New York City and, after the merger, G-Star Inc. continued to do so. The sole shareholder of G-Star

1

Inc. is G-Star Raw C.V., whose headquarters in Amsterdam oversees the global group of companies affiliated with it, including to operate the Information Communication & Technology ("ICT") areas, to work with the Sales Back Office ("SBO"), and to assist with Human Resources ("HR"), sometimes with advice from Global HR head, Willemien Storm.

4    True copies of pages from the transcript of Plaintiff's deposition, taken on July 2, 2018, are attached hereto as **Exhibit A**. True copies of pages from the transcript of the second day of Plaintiff's deposition, which was continued pursuant to Court order and taken on September 17, 2018, are attached hereto as **Exhibit B**.

5.    True copies of pages from the transcript of the deposition of Willemien Storm, G-Star Global HR head, taken on September 6, 2018, are attached hereto as **Exhibit C.**

6.    True copies of pages from the transcript of the deposition of Kendra Palmer, a supervisor of Plaintiff, taken as the 30(b)(6) witness for Defendants on September 20, 2018, are attached hereto as **Exhibit D.**

7    **Exhibit E** attached hereto is Plaintiff's Amended Rule 26 disclosures dated May 31, 2018 in which she computes her damages as follows:

| Item | Basis | Amount |
|---|---|---|
| 2012 Unpaid Wages | NYLL / FLSA | $ 288.48 |
| 2013 Unpaid Wages | NYLL / FLSA | $ 3,416.16 |
| 2014 Unpaid Wages | NYLL / FLSA | $ 15,292.38 |
| 2015 Unpaid Wages | NYLL / FLSA | $ 15,813.80 |
| 2016 Unpaid Wages | NYLL / FLSA | $ 19,329.55 |
| 2014 Lost Wages | | $ 72,800.00 |
| 2015 Lost Wages | | $ 72,625.00 |
| 2016 Lost Wages | | $ 60,013.42 |
| 2017 Lost Wages | | $ 117,969.59 |
| 2018 Lost Wages | | $ 125,000.00 |
| Compensatory Damages | | $ 400,000.00 |
| Punitive Damages | | $ 10,000,000.00 |
| Statutory Damages 198(1-d) & (1-b) | | $ 10,000.00 |
| Attorneys' Fees | | $ 76,361.00 |
| Costs | | $ 503.00 |
| **TOTAL** | | **$ 10,989,412.38** |

8. **Exhibit F** attached hereto is Deposition Exhibit 41, ███████████████████████████████████████████████████████████████████████████████████. See attached Exhibit B at Tr. 322.

9. Plaintiff contends that Defendants should have known that litigation was likely when Plaintiff made a "Formal Complaint" in September 2016 while still employed. The Formal Complaint was made to Global HR head Willemien Storm, who handled the investigation of the complaint. At her deposition, Ms. Storm acknowledged that Plaintiff said she had a lawyer, but Ms. Storm had no recollection that Plaintiff had said anything else with respect to having counsel. See attached Exhibit C at Tr. 142-143. Action was taken to resolve Plaintiff's complaint, with Plaintiff's involvement (*Id.* at Tr. 180 – 181) and Plaintiff continued to be employed until January 27, 2017.

10. On or about Friday, March 31, 2017, Kendra Palmer received information that Mourad Elayan, a representative of a Franchisee whose franchise had been terminated, told a former manager that Plaintiff was going to sue. Mourad Elayan went on to say that Ms. Palmer and the former manager would be spotlighted in the suit and that he was going to go to the press. (See Exhibit D hereto at Tr. 21-22.)

11. G-Star did not see Mr. Elayan's call as likely to lead to litigation. G-Star had previously had contact with Mourad Elayan about unfounded lawsuits, which did not materialize. For example, see bates page G-Star 0132422 attached hereto as **Exhibit G,** in which Mourad Elayan states, ███████████████████████████████████████████

12. Within a day or two after the contact from Mourad Elayan, during the night (European time) of Saturday or Sunday, April 1 or 2, 2017, a voice message was left for the

3

Global HR head, Willemien Storm. All that could be heard was the name Gary and the phone number 646-650-2198.

13. By Google search, I determined from the phone number that the caller was Gary Adelman and on Monday, April 3, 2017, I returned his call to Ms. Storm. Mr. Adelman said that he represented Hazel Cruz and that he had been "retained to look into" hostile work environment, sexual harassment and FLSA violations. Mr. Adelman gave me no more information. He said that he would write up what Ms. Cruz claims happened and get back to me.

14. From April 3, 2017 until July 20, 2017, I did not have any contact with anyone representing Hazel Cruz. I did not receive any letter from Mr. Adelman or his firm (Adelman Matz P.C.) until July 20, 2017 when I received a five page letter, a copy of which is attached hereto as **Exhibit H.** The letter put G-Star on notice that it was likely that Plaintiff would commence a lawsuit.

15. On July 25, 2017, I gave G-Star HR a first list of documents to assemble and, around the same time, I spoke with G-Star in house counsel about the need to preserve evidence.

16. Submitted in opposition on this motion is the declaration of Rob van der Bent (the "van der Bent Decl."), the Manager in Information Communication & Technology ("ICT"), Support & Procurement, at global headquarters of G-Star Raw C.V., who oversees implementation of the document retention and destruction policies of G-Star Raw C.V. as applicable to email files of employees of Defendants. He confirms at paragraph 7 of his declaration that in late July 2017, he was informed to put a hold on various email accounts including for Hazel Cruz and that his department put a hold on such email accounts; however, no one took note that the email of Hazel Cruz had already been deleted.

17. On September 1, 2017, Adelman Matz commenced this lawsuit in New York State Court and the G-Star Defendants accepted and admitted service of process by Stipulation dated September 14, 2017.

18. On October 2, 2017, I emailed to G-Star's in house counsel and HR representatives an extended list of documents that were needed. As to Plaintiff's email, I noted that "[w]e eventually will have to p[roduce] many emails from the years of Hazel's edmployment [sic]. I will work on a list of reasonable search terms."

19. Defendants removed this case to the Southern District of New York on October 10, 2017, and the case was assigned to Judge Gardephe.

20. Defendants filed their answer to the Complaint on October 12, 2017. A true copy is attached hereto as **Exhibit I**. Among other defenses, the Thirteenth Affirmative Defense is that Plaintiff is an exempt employee under both the Fair Labor Standards Act and the New York State Labor Law (see page 25) and the Sixteenth Affirmative Defense is that Plaintiff is not entitled to spread of hours pay because G-Star compensated Plaintiff at a rate higher than minimum wage and because she is an exempt employee (see page 26).

21. On October 17, 2017, Judge Gardephe issued a Notice of Pretrial conference to take place on February 1, 2018.

22. On January 11, 2018, when I spoke to opposing counsel Ms. Matz for our Rule 26(f) conference, I did not know that Plaintiff's emails had been deleted. I assumed that they had been preserved based on my specific mention of Plaintiff's emails in the list I provided my clients on October 2, 2017. I did not know that Plaintiff's SAP account had been deleted. I did not know anything about SAP, Retail Pro and Sales Force files; I was not aware of such files and Plaintiff's counsel had not yet mentioned them.

23. On March 9, 2018, I received Plaintiff's discovery demands and forwarded them to my clients. This was the first time that I had an understanding that Plaintiff saw SAP, Retail Pro and Sales Force files as relevant to the litigation as to her hours. She had not named such documents in her Rule 26 disclosures dated February 16, 2018 as documents she might use to support her claims.

24. Later in March, in-house counsel reported that the email file of Hazel Cruz had been deleted, but he had just learned of that. ICT Support and Procurement is operated out of Amsterdam by G-Star Raw C.V. for its affiliated companies worldwide. As explained further in the van der Bent Decl., the deleted email of Hazel Cruz could not be restored in full copy, but only in archived form. Nevertheless, G-Star proceeded to restore Plaintiff's emails in the archived form, in a .PST file. All of the messages in the .PST file show the sender, receiver(s) and copy reader(s). All of the messages in the .PST file show the dates and times the messages were sent.

25. The archived form of Plaintiff's email was restored by April 9, 2018; however, because the emails were not in full form as archived, thereafter, we worked with in-house counsel to identify other employees whose email files would contain messages to or from Plaintiff or would have Plaintiff as a copy reader. Additionally, we proceeded to produce many documents requested as summarized at the end of this message.

26. In April I learned that the SAP electronic files for Plaintiff had been deleted in December 2017 as is explained more fully in the declaration, submitted in opposition, of Klaas Buist, Manager of the ICT. As to the RetailPro and Salesforce systems, Mr. Buist states in his declaration that only shared functional user ID's were available for use by Hazel Cruz while she was employed, so no personal account was available in these systems that can be linked for

certain to Hazel Cruz.  Until I reviewed Mr. Buist's declaration this week, I had wrongly understood that there was a user ID for Ms. Cruz for Retail Pro and Salesforce and that we are unable to produce information because the personal account had been deleted.   I now understand that we are unable to produce information for Retail Pro and Salesforce because she had no personal account.

27. Through April and May, I did not yet disclose the deletions to Plaintiff's counsel because in-house counsel had not yet sent us a more detailed report concerning the deletions and because Defendants were continuing to try to identify other sources for the requested information.  Also, as litigation counsel, we were speaking with an e-discovery consultant to assist with the email review of other custodians and so that we would be able to produce complete versions of emails from Plaintiff's email file.

28. On May 3, 2018, counsel for each side appeared before Judge Gardephe for a pre-trial conference.  Judge Gardephe ordered that the case be referred to Magistrate Judge Wang for settlement purposes.  The parties engaged in more discovery meet and confers and eventually agreed to participate in an all-day mediation.

29. On May 23 and 24, 2018, I received more detailed information from G-Star in-house counsel showing the timing of the deletions.  The date of the email deletions was stated to be June 3, 2017.  However as shown in the van der Bent Decl., only while checking facts for his declaration in opposition to the instant motion did Mr. van der Bent realize that he had misapprehended that the date in the deletion log of 03/06/2017 was written in US style.  What caused him to take note was that he saw that June 3, 2017 was a Saturday.  Since deletion of email accounts are done manually, the deletion would not have occurred on a Saturday.  (See van der Bent Decl. ¶ 9.)

30. With the mediation coming up, I deferred disclosing the deletions since both Plaintiff and Defendants had stated an interest in settlement and Defendants might yet find a substitute way to provide what had been deleted.

31. The mediation took place on June 27, 2018 ███████████████████████████

███████████████████████████

32. On July 2, 2018, Plaintiff finally appeared for her deposition which was originally noticed for April 18, 2018. At her deposition, Plaintiff was questioned about ████████

████████████████████████ Plaintiff claimed █████████████

████████████████████████████████ She went on to testify that

████████████████████████████████████████████████████████

██████ See attached Ex. A at Tr. 64-68.

33. As July proceeded, with the help of our e-discovery consultant, I believed that the remaining discovery would be accomplished by applying search terms to the email files of seven custodians and, at the same time, we would retrieve Plaintiff's emails in the other custodian's files. Those seven custodians' complete email files were preserved by Defendants for use in this litigation.

34. On July 26, 2018, during a meet and confer phone call, I disclosed to Plaintiff's counsel that the email had been deleted in June 2017 and that the SAP, Retail Pro and Sales Force files had been deleted in December 2017. I explained that it was not an intentional destruction of evidence, but resulted from routine business practices.

35. On August 1, 2018, Defendants served an answer to Plaintiff's Interrogatory 9, which states:

> Identify all exemptions that form the basis for Defendants'
> defenses that Plaintiff was exempt from receiving overtime

8

>wages, including, but not limited to Defendants' Thirteenth and Sixteenth Affirmative Defenses; and State the Basis for each exemption identified.

**Exhibit J** attached hereto is Defendants' Answers to Plaintiff's Second Set of Interrogatories which includes Defendants' response to Plaintiff's Interrogatory No. 9 which identifies the basis in the evidence produced in this case (as of August 1, 2018) for Defendants' affirmative defenses that Plaintiff was an exempt employee not eligible for overtime pay nor spread of hours pay.

36. In appearing before this Court on August 2, 2018, I stated that Plaintiff's emails were deleted on June 3, 2017. I also stated that the SAP data and similar kinds of files had been deleted in December 2017. My associate explained to the Court that the Plaintiff's emails were accessible in a .PST file, many were in archived format, and in total there were about 100,000 emails in various stages of completeness. As can be seen at pages 7 and 8 of the transcript, I made clear that Defendants had seven other custodians that could be searched. Plaintiff's counsel preferred to take the PST file instead. True copies of pages 7 and 8 from the transcript of the appearance of counsel for the respective parties in this case before this Court on August 2, 2018 is attached hereto as **Exhibit K.** Defendants produced to Plaintiff's counsel their reconstruction of Plaintiff's email file on August 9, 2018. As to the other custodians, Plaintiff did not respond to a list of search terms proposed by my office earlier.

37. This week, ICT figured out a way to restore Plaintiff's SAP reports for the years 2014, 2015, 2016 and 2017 and to put the information in tables. These tables show the time of Plaintiff's usage of the system. The tables were produced to Plaintiff's counsel on Tuesday, October 30, 2018. As explained in the declaration of Klaas Buist, for 2012 and 2013, his team did not find any sales orders under USCRUZH, the digital signature for Plaintiff, but his team did see orders under USWEEKJ, another US SBO employee in those years.

39. Over the course of discovery in this litigation,

A. Plaintiff herself has produced 123 Bates pages of complete versions of her own emails while employed by G-Star (including 17 complete emails from January 2017, the month for which Plaintiff claims all of her emails have been lost). A list of them is attached as **Exhibit L**.

And, among more than 6,000 pages of other information (not including the Bates pages of emails from Plaintiff's reconstructed .PST email file):

B. Defendants have produced 2,541 Bates pages of complete versions of Plaintiff's emails (including complete emails from January 2017). A list of them is attached hereto as **Exhibit M**.

C. Defendants have produced more than 1,000 pages of daily log-in information for the office computers used by Plaintiffs over the entire time of her employment.

D. Defendants have produced the absence record for Plaintiff over the entire time of her employment.

E. Defendants have produced weekly attendance lists for the duration of Plaintiff's employment.

F. Defendants have produced Plaintiff's email file, in .PST format, which includes timestamps and shows any sending of emails by Plaintiff outside of business hours.

G. Defendants have produced complete versions of emails from 2016 showing Plaintiff's late work schedule on specified dates, in connection with converting stores from franchise to owned & operated.

H. As noted above, on October 30, 2018, Defendants produced tables from the SAP system from 2014, 2015, 2016, and 2017 which show the time Plaintiff used the SAP system to enter orders.

The depositions of Plaintiff, Willemien Storm, Jouvonda Weeks, Juan Garcia, Kendra Palmer, Tony Lucia, and Julieta Contento have yielded additional evidence. The upcoming depositions of Abiy Paulos, Charlie Kemmerer, Claudia van Hunnik, and Mourad Elayan – as well as the continuations of the depositions of Kendra Palmer (both individually and in her capacity as G-Star's Rule 30(b)(6) witness) and Tony Lucia – will yield even more evidence. Each of these

10

deponents was involved in Plaintiff's work with G-Star, as shown by Plaintiff's Rule 26 Initial Disclosures and █████████████████████████. *See, e.g.*, Ex. E (Pl.'s Amended Initial Disclosures).

.    40.    G-Star's position on Plaintiff's causes of action is that they have no merit. This is shown by the following facts, which are supported by evidence obtained in the course of discovery:

A.    At all relevant times, G-Star had fifteen to twenty employees, including African Americans, Asians, Hispanics, and Caucasians. Starting in late 2016, G-Star was managed by Kendra Palmer and Juan Garcia. Kendra Palmer – a female – is now General Manager of North America.

B.    Plaintiff began employment with G-Star USA LLC on November 1, 2012, in the position of Senior SBO Employee. After G-Star USA LLC merged with and into G-Star Inc., Plaintiff continued in this role as an employee of G-Star Inc. Plaintiff was responsible for managing SBO in the United States and serving as a liaison with headquarters in Amsterdam. On December 1, 2015, Plaintiff was promoted to the role of Local Customer Service Manager and received a pay increase. In this capacity, Plaintiff continued to manage SBO in the United States, as a direct report of the Country Manager, and helped to manage the operations of franchise stores and assist with G-Star's takeover of franchise stores. Plaintiff was an exempt employee.

C.    From late 2015 until September 2016, there were many performance failings by Plaintiff which harmed G-Star's business. In September 2016, Ms. Palmer began to take steps to terminate Plaintiff's employment. On September 24, 2016, Plaintiff sent a "Formal Complaint" to Willemien Storm, complaining that she was being "overworked" and that there

11

was a conspiracy to fire her.  Plaintiff did not complain about sexual harassment or discrimination.  The following week, when Willemien Storm spoke with Plaintiff and asked "if there was anything else concerning [her] that [she] had not addressed," Plaintiff continued to complain about her workload and stated that she had seen text messages reflecting that Kendra Palmer wanted to fire her.  Willemien Storm asked Plaintiff for copies of the text messages, and Plaintiff responded that she wanted to speak with her lawyer before providing them.  However, Plaintiff did not threaten litigation.

    D. To address Plaintiff's concerns, it was decided that Plaintiff's job title and salary would remain the same, but her workload would be reduced.  Plaintiff appeared to be satisfied with the workload reduction, and, approximately two weeks later, indicated to Willemien Storm that conditions had improved.

    E. Although Plaintiff's workload was reduced, Plaintiff's job performance continued to suffer.  Then, due to a mix-up over the distribution of performance evaluations for Plaintiff's SBO team, and because Plaintiff took a personal day on the due date, Kendra Palmer completed the performance evaluations for Plaintiff.  Upon discovering this, Plaintiff was insubordinate toward Kendra Palmer.  She then wrote a "Second Complaint" to Willemien Storm.  In her "Second Complaint," Plaintiff did not complain about sexual harassment or discrimination.  G-Star ultimately terminated Plaintiff's employment with G-Star on January 27, 2017.

    F. To the extent that Plaintiff now claims sexual harassment, such claims are not supported by the evidence.  Plaintiff's deposition testimony ███████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████ Plaintiff also sought – and obtained – employment following the termination of her employment with G-Star with Mourad Elayan, a former franchise partner ███████████████████

███████████████████

I declare under penalty of perjury that the foregoing is true and correct.

Dated: November 2, 2018
New York, New York

_____
Kathleen M. Kundar