UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
CHRISTINE HAZEL S. CRUZ,

                                Case No.: 1:17-cv-07685 (PGG) (OTW)

                  Plaintiff,

              v.

G-STAR INC., G-STAR USA LLC, and G-STAR
RAW C.V.

                  Defendants.
----------------------------------------------------------X

## PLAINTIFF'S LIMITED OBJECTIONS TO THE REPORT AND RECOMMENDATION OF THE HONORABLE ONA T. WANG

**ADELMAN MATZ P.C.**
**1173A Second Avenue, Suite 153**
**New York, New York 10065**
**Phone: (646) 650-2207**
*Attorneys for Plaintiff*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

STATEMENT OF FACTS.................................................................................................. 1

    1.    Pre-Litigation Complaints........................................................................ 2

    2.    Defendants' Failure to Disclose the Deletion ........................................ 5

    3.    Defendants' Finally Disclose the Destruction of Emails and Other ESI ................. 8

    4.    Judge Wang's Findings Supporting the Elements of Spoliation and Intent Warranted Remedy Under Fed. R. Civ. P. 37(e)(2)........................................... 10

STANDARD OF REVIEW ................................................................................................ 13

PLAINTIFF'S SPECIFIC LIMITED OBJECTIONS.................................................... 13

  I.    The Remedy of Adverse Inference Does Not Fit the Wrong........................ 14

  II.    Defendants' Intentional Spoliation of ESI Warrants Entry of Default Judgment.......... 18

  III.    Striking Defendants' Affirmative Defenses and/or Preclusion Orders Are Also Justified as an Alternative Additional Remedy .................................................. 21

  IV.    Plaintiff Objects to the Consideration of the Majority of Kundar's Declaration Concerning Defendants' Alleged Preservation Efforts ........................................ 24

  V.    Plaintiff Objects to the Conclusion that Plaintiff's Email was Deleted on March 6, 2017 ......................................................................................... 24

CONCLUSION .................................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bobal v. Rensselaer Polytechnic Inst.*,
    916 F.2d 759 (2d Cir.1990) ................................................................................. 18

*Breuer Elec. Mfg. Co. v Toronado Sys. of Am., Inc.*,
    687 F2d 182 (7th Cir 1982) ............................................................................... 4, 5

*Brown Jordan Int'l, Inc. v. Carmicle*,
    2016 WL 815827 (S.D. Fla. Mar. 2, 2016) ......................................................... 15

*CAT3, LLC v. Black Lineage, Inc.*,
    164 F. Supp. 3d 488 (S.D.N.Y. 2016) ............................................................ 15, 24

*Cine Forty–Second St. Theatre Corp. v. Allied Artists Pictures Corp.*,
    602 F.2d 1062 (2d Cir.1979) .............................................................................. 18

*Glob. Material Techs., Inc. v. Dazheng Metal Fibre Co.*,
    2016 WL 4765689 (N.D. Ill. Sept. 13, 2016) ..................................................... 20

*In re Adelphia Commc'ns Corp.*,
    2007 WL 601452 (Bankr. S.D.N.Y. Feb.20, 2007) ............................................. 24

*In re WRT Energy Sec. Litig.*,
    246 FRD 185 (S.D.N.Y. 2007) ........................................................................... 22

*Jenkins v. Woody*,
    2017 WL 362475 ............................................................................................... 22

*Jones v Niagara Frontier Transp. Auth. (NFTA*,
    836 F2d 731 (2d Cir 1987) ................................................................................ 18

*Lokai Holdings LLC v. Twin Tiger USA LLC*,
    2018 WL 1512055 (S.D.N.Y. Mar. 12, 2018) ..................................................... 22

*Metropolitan Opera Ass'n, Inc. v. Local 100, Hotel Employees & Rest. Employees Int'l Union*,
    212 F.R.D. 178 (S.D.N.Y. 2003) ............................................................. 15, 19, 20

*Miller v. Time-Warner Commc'ns, Inc.*,
    1999 WL 739528 (S.D.N.Y. Sept. 22, 1999) ...................................................... 21

*Miller v. Time-Warner Communications, Inc.*,
    1999 WL 440781 (S.D.N.Y. 1999) ..................................................... 18, 19, 21, 22

*Nelson v. Smith*,
    618 F. Supp. 1186 (S.D.N.Y. 1985) ................................................................... 13

*Ottoson v. SMBC Leasing & Fin., Inc.*,
    268 F. Supp. 3d 570 (S.D.N.Y. 2017) ................................................................ 15

*Outley v. New York*,
  837 F.2d 587 (2d Cir.1988) ....................................................................... 22

*Residential Funding Corp. v. DeGeorge Fin. Corp.*
  306 F.3d 99, 108 (2d Cir. 2002) .............................................................. 17

*Taylor v City of New York*,
  293 F.R.D. 601 (S.D.N.Y. 2013).............................................................. 22

TLS Mgmt. & Mktg. Servs., LLC v. Mardis Fin. Servs., Inc.,
  2018 WL 3673090 (S.D. Miss. Jan. 29, 2018)....................................... 20

*United States v. Bilzerian*,
  926 F.2d 1285 (2d Cir.1991) ................................................................... 24

*Valentine v. Museum of Modern Art*,
  29 F.3d 47 (2d Cir.1994) ........................................................................ 18

*Volcan Grp., Inc. v. T-Mobile USA, Inc.*,
  2011 WL 6141000 (W.D. Wash. Dec. 9, 2011) ..................................... 24

*West v. Goodyear Tire & Rubber Co.*,
  167 F.3d 776 (2d Cir.1999) ...................................................... 15, 22, 24

## Rules

Fed. R. Civ. P. 37(e) 2015 ............................................................................ 22

Fed. R. Civ. P. 37(e)(2)......................................................................... Passim

Fed. R. Civ. P. 37(e)(2)(C) .......................................................................... 21

Fed. R. Civ. P. 37, 2015 ......................................................................... 14, 19

Fed. R. Civ. P. 72(b)(3)......................................................................... 13, 14

FRE 408 ........................................................................................................... 4

Rule 37(e)(1)................................................................................................. 21

Plaintiff Christine Hazel S. Cruz respectfully submits the following limited objections to the Report and Recommendation dated June 19, 2019, by Honorable Ona T. Wang, United States Magistrate Judge for the Southern District of New York.[1] [Dckt. No. 89] (the "R&R").

Plaintiff agrees with and does not object to the vast majority of the findings in the R&R. While Plaintiff agrees that adverse inferences are warranted, in light of Judge Wang's correct factual findings as to the elements of spoliation, intent and the prejudice Plaintiff has suffered, Plaintiff respectfully objects to Judge Wang's decision to deny Plaintiff's request for default judgment, striking of Defendants' affirmative defenses and/or for appropriate preclusion orders, in addition to the adverse inferences recommended.  As set forth herein, given the egregiousness of Defendants' conduct in intentionally destroying extremely relevant ESI and then misleading Plaintiff and this Court about the destruction, the Plaintiff respectfully requests that additional sanctions should be imposed.

## **STATEMENT OF FACTS**[2]

This is an action to recover for, *inter alia*, Defendants' willful failure to pay wages, including overtime wages, spread of hour pay and failure to provide proper wage statements and wage notices in violation of the FLSA and NYLL.  *See*  Matz Decl., Ex. 1 (the "Complaint"); R&R Pp. 1. From at least 2012-2015, Plaintiff was provided with notices from Defendant advising Plaintiff that she was entitled to receive overtime and what that overtime rate was.  *See* Matz Decl., Ex. 2; R&R Pp. 4.  Defendants' own internal documents show that HR classified Plaintiff as an hourly employee –not as exempt.  *See* Matz Decl., Ex. 3.  Defendants' have admitted that there was

---

[1] Plaintiff's papers previously submitted in support of her Motion for Sanctions are hereby expressly incorporated by reference and sometimes referred to herein as follows: (i) "Plaintiff's MOL" shall refer to Plaintiff's Memorandum of Law in Support of Plaintiff's Motion [Dckt. No. 46]; (ii) the "Adelman Decl." shall refer to the Declaration of Gary Adelman dated October 1, 2018 [Dckt. No. 43] ; (iii) the "Matz Decl." shall refer to the Declaration of Sarah M. Matz dated October 1, 2018 [Dckt. No. 45]; (iv) the "Cruz Decl." shall refer to the Declaration of Christine Hazel S. Cruz dated October 1, 2018 [Dckt. No. 44];  (v) "Plaintiff's Reply MOL" shall refer to Plaintiff's Memorandum of Law in Further Support of Plaintiff's Motion For Sanctions [Dckt. No. 57]; and (vi) the "Matz Reply Decl." shall refer to the Declaration of Sarah M. Matz dated November 1, 2018 with exhibits [Dckt. No. 58].

[2] The Statement of Facts is drawn from the submissions in support of Plaintiff's Motion for Sanctions, and is recited in part herein for the Court's convenience in having access to the facts that are relevant to Plaintiff's limited objections listed herein, *infra*.

no time keeping system in place.  *See* Matz Decl., Ex. 4 9/20/18 Tr., pp. 79:13-80:2.  Defendants'

have also admitted that they were aware of some instances where Plaintiff worked more than 40

hours in a week and documents demonstrate that near the beginning of her employment Plaintiff

notified Defendants that she was working past 6pm regularly and requested overtime, but was told

that G-Star did not pay overtime.  *See* Matz Decl., Ex. 33 9/18/18 Tr., pp. 122:9-122:13 and Ex. 5.

Plaintiff also seeks to recover for Defendants' acts of gender discrimination, racial

discrimination, discriminatory harassment, sexual harassment, hostile work environment and

retaliation in violation of New York City Human Rights Law and New York State Human Rights

Law, which Plaintiff was subjected to while she was employed by Defendants.  *See* Complaint" ¶¶

1, 79-115, 207-214.  As set forth in the Complaint, throughout Plaintiff's employment she was

subjected to inappropriate, harassing and discriminatory treatment.  By way of just some examples,

Plaintiff was subjected to numerous unwanted sexual advances by senior management.  *See id* ¶¶

33-36, 43-45; R&R Pp. 5.  When she brought these issues to the attention of the Country Manager,

he made jokes about it in front of Plaintiff's other colleagues, further humiliating and embarrassing

Plaintiff. *See id* ¶36; R&R Pp. 5.  In January of 2015, one of Plaintiff's superiors sent an email to

other superiors, copying Plaintiff, commenting about how he knew one of the others was focused on

Plaintiff's "ass".  See Matz Decl., Ex. 6; R&R Pp. 5.  Plaintiff was further humiliated and

demanded when he openly discussed and joked about the email in front of a group of Plaintiff's

colleagues.  *See* Complaint ¶36; R&R Pp. 5.  Plaintiff was also overlooked for promotions, on

account of her gender and race.  *See id* ¶¶1, 131-160, 180-189, 199-206; R&R Pp. 3.

### 1.  Pre-Litigation Complaints

At various times throughout her employment, Plaintiff made verbal complaints about the

treatment she was subjected to.  *See* Complaint ¶156.  As noted above, most of the time these

complaints were ignored, or Plaintiff was laughed at and teased about the unwanted attention she

was receiving.  *See id* ¶156.  On September 24, 2016, Plaintiff filed a complaint with G-Star's

Human Resources Department regarding, *inter alia*, the "hostile work environment" Palmer was

fostering, that she was being "unfairly treated" and intentionally overworked, that there was a

conspiracy to "unlawfully fire [her] for undue cause", and that management had ignored her prior complaints.  *See* Matz Decl., Ex. 8 (the "First HR Complaint"); R&R Pp. 6.

On October 5, 2016, Storm confirmed in an email that Plaintiff (i) was claiming that she had raised these issues with Defendants' CEO before "but that it hasn't been solved"; (ii) was asking HR to "intervene and ensure a fair working environment"; and (iii) that in response to a question about improving a relationship with the person Plaintiff accused of fostering a hostile work environment, Plaintiff had said she wanted to discuss with her lawyer first.  *See* Matz Decl., Ex. 11. On October 7, 2018, Plaintiff responded and among other things further advised Storm that there were witnesses and evidence to support her claims and that she wanted HR to intervene to ensure a "safe, non-threatening, pleasant work environment."  *Id.*

Shortly after filing the First HR Complaint, Defendants' HR Representative made one of the subjects of the First HR Complaint, Kendra Palmer, aware that Plaintiff had filed a complaint, and contacted Defendants' litigation counsel Ms. Kundar for advice.  *See* Matz. Decl. Ex. 7; Ex. 32 9/20/18 Tr., pp. 97:18-97:21 (confirming Defendants contacted Ms. Kundar); R&R Pp. 6.

Whatever advice HR obtained from counsel was forwarded to members of Defendants' senior management.  *See* Matz Decl., Ex. 4 (10 9/20/18 Tr., 24:16-25:16); Ex. 10 (7/12/18 Tr., pp. at 13:24-14:2, 17:09-13); and Ex. 7 (showing redacted legal advice being forwarded to members of senior management.  Only days after Plaintiff's call with HR, on October 10 and 11, 2016, Kendra Palmer, one of the subjects of the First HR Complaint, sent Ms. Storm (from HR) emails with alleged reasons to terminate Plaintiff, which HR said it needed her to fill in so they could have it reviewed by the lawyer.  *See* Matz Decl., Ex. 12 and Ex. 17 (pp. 1-2 "Kendra/Juan, can you please fill in the blanks (XXXX) that we need to explain the reasons for the employment termination . . . Please send back to Fanny and myself asap so I can have it reviewed by the lawyer today" with Ms. Palmer's in line responses); R&R Pp.8.

On or around January 9, 2017, Plaintiff filed a second complaint with HR.  *See* Matz Decl., Ex. 13; R&R Pp.9.  On January 26, 2017, G-Star terminated Plaintiff.  *See* Matz Decl., Ex. 14; R&R Pp.9.  Plaintiff was offered a severance package in exchange for a release of claims including

claims based on the New York State and City Human Rights acts, an acknowledgement of payment for all compensation due, that the agreement would be "a full and complete settlement . . . of any and all claims", as well as an affirmation that no complaint or action had been filed.[3]  *See* Matz Decl., Ex. 14; R&R Pp.9.  Plaintiff did not sign or agree to this release.

In or around March of 2017, counsel for Plaintiff, Gary Adelman contacted Defendants regarding Plaintiff's intention to pursue formal legal action.  *See* Adelman Decl. ¶3; R&R Pp.11. That message was apparently relayed to Defendants' counsel Kathleen Kundar, who contacted counsel for Plaintiff by telephone on or around April 3, 2017.  *See* Matz Decl., Ex. 15 Pp. 55:25-56:9; Adelman Decl. ¶4; R&R Pp. 11.  During that call, counsel for Plaintiff informed Ms. Kundar that Plaintiff intended to bring claims against G-Star for *inter alia* FLSA and NYLL violations, based on unpaid overtime wages, as well as sexual harassment, hostile work environment, discrimination based on race and gender, and retaliation.  *See* Matz Decl., Ex. 15 Pp. 55:25-56:9 (Ms. Kundar admitted that she knew that there were "going to be claims made" based off of the conversation with Plaintiff's counsel); Adelman Decl. ¶4; R&R Pp. 11.  Ms. Kundar asked Mr. Adelman for his contact information and sent him a "test email" so he would have hers.  *See* Adelman Decl. ¶5, Ex. 1; R&R Pp. 11.  Defendants' admitted that they knew from at least this point that the Plaintiff would be making a claim. *See* Matz Decl., Ex. 4, pp 21:6-25.

Defendants' counsel represented to Plaintiff and the Court that Defendants deleted Plaintiff's e-mail account on or about June 3, 2017, and argued in Court that since this was prior to the service of formal document demands in this case that they did not have a duty to preserve.  *See* Matz Decl., Ex. 15 Pp. 56:3-56:15; Matz Decl. ¶31; R&R Pp.10 fn. 7.[4]

Prior to this deletion, it appears that Defendants preserved from Plaintiff's email file emails about an NYU course Plaintiff took, which they presumably believe will help them with their

---

[3] FRE 408 "does not require exclusion when the evidence is offered for another purpose...." In this case, the "settlement" evidence was properly presented below to rebut defendants' assertion that they had not been aware of the issues until the suit was filed." *Breuer Elec. Mfg. Co. v Toronado Sys. of Am., Inc.*, 687 F2d 182, 185 (7th Cir 1982).

[4] After receiving Plaintiff's Motion for Sanctions, Defendants tried to change their story and claim that Plaintiff's email account was deleted on March 6, 2017, which Plaintiff objects to.

exemption defense.  *See e.g.* Matz Reply Decl., Ex. 41.  This email was forwarded from Plaintiff's personal email to her G-Star email, and no one else was copied.  This email could not have come from another source, or custodian, other than Plaintiff's G-Star email and must have been preserved before the deletion, as the version in the .pst file, this email is corrupted and cut off.  *See* Matz Reply Decl., Ex. 42.

Further, the data from SAP (the software Plaintiff used on a daily basis to input orders and run reports) was also deleted in December of 2017, long after this action was filed on September 1, 2017.  *See* Matz Decl., Ex. 15 Pp. 57:6-9; Ex. 1; R&R Pp. 25.  Following the filing of Plaintiff's Motion for Sanctions, Defendants produced partially recovered SAP data.  However, the recovered SAP data is woefully deficient, as it only shows order entry, and does not contain login times, or evidence of other use and activity such as running reports, which Plaintiff did frequently, and it is missing all of Plaintiff's data from 2012 and 2013.  *See* Matz Reply Dec. Ex. 43.  Similarly, the computer login report that was produced only shows logins, not logouts.

### 2.  Defendants' Failure to Disclose the Deletion

On or around January 11, 2018, counsel for the parties held their Rule 26(f) conference.  *See* Matz Decl. ¶20; R&R Pp. 12.  Counsel for Plaintiff identified that Plaintiff would be seeking communications from Plaintiff's email, Ms. Kundar did not raise any issues with the preservation of same nor did she indicate that anything had been deleted.  *See id.*  To the contrary, Ms. Kundar stated that relevant documents were being preserved.  *See id.*

On or around March 8, 2018, pursuant to the then current Scheduling Order, Plaintiff served her first Requests for Production and First Set of Interrogatories.  *See* Matz Decl., Ex. 18.  Among other things, Plaintiff requested documents and communications sufficient to evidence the time and date of Plaintiff's logins to, or use of, SAP as well as other systems Plaintiff used while employed by Defendants.  *See* Matz Decl., Ex. 18. Req. Nos. 22- 25.  Plaintiff also asserted requests for Plaintiff's emails, including but not limited to, No. 26 (which seeks a printout of emails to show the times she is working), No. 9 (communications with offices in other countries and time zones that is relevant to the overtime claims), Nos. 13 and 16 (communications related to Plaintiff's alleged

authority and primary job duties, which are relevant to the exemption defense), No. 34 (communications related to Plaintiff's performance), No. 47 (documents and communications related to any formal or informal complaints by Plaintiff), Nos. 54, 57, 59, 61, 63, and 65 (communications between Plaintiff and HR as well as employees of Defendants, including the individuals that discriminated against, harassed and created the hostile work environment).  *See* Matz Decl., Ex. 18. Req. Nos. 13, 16, 22-25, 34, 47, 54, 57, 59, 61, 63, 65.  Plaintiff also requested a copy of her outlook calendar and any team or shared calendars of which Plaintiff was a member during Plaintiff's employment, and a table style printout of Plaintiff's sent and received email. *See* Matz Decl., Ex. 18. Req. Nos.  26 and 31.

 Unbeknownst to Plaintiff at the time, it was in March of 2018 that Ms. Kundar allegedly first learned of the deletions.  *See* Kundar Decl. ¶24.  Defendants served their written responses to the First Demands and First Interrogatories on April 9, 2018.  *See* Matz Decl., Ex. 19, 20; R&R Pp. 14. In their Initial Written Responses, Defendants objected to many of the above requests, including requests for ESI and emails on the grounds that, *inter alia*, the requests were overly broad, unduly burdensome.  Defendants did not mention that they had deleted Plaintiff's email or SAP.  *See* Matz Decl. Ex. 19; R&R Pp. 14. Although Plaintiff was not aware of the deletion, it was readily apparent from Defendants' production at that time that many responsive documents had not been produced. On May 2, 2018, the parties held an initial meet and confer.  *See* Matz Decl., ¶21; R&R Pp. 15. Among other issues raised, was Defendants failure to produce many electronically stored records and communications, including calendar events and email attachments, and that it was not clear what was being withheld.  The parties agreed to exchange letters outlining their issues, and then have a further meet and confer.  Plaintiff sent her letter outlining the then outstanding discovery issues on May 14, 2018.  *See* Matz Decl., ¶25, Ex. 21.  Thereafter, Counsel for the parties met and conferred over the phone on May 22 and 24, 2018 to discuss.  *See* Matz Decl. ¶26; R&R Pp. 15.

 At no time during those calls did Defendants' counsel disclose that Plaintiff's email had been deleted, even when discussing directly relevant demands.  *See* Matz Decl. ¶27; R&R Pp. 15. For example, when the issue of the table style printout came up, Defendants' counsel said that she

was working on finding out what was possible, and would get back to us but did not indicate that the emails had been deleted. *See* Matz Decl., ¶27. When the issue of Defendants' failure to produce many of the WTPA notices came up, Plaintiff's counsel specifically asked if emails had been searched, and Ms. Kundar responded that they could only produce what they could find, but omitted that Plaintiff's email had been deleted. *See* Matz Decl., ¶28. When discussing the requests seeking documents and communications evidencing the time and date of Plaintiff's logins and use of software programs, including SAP, Defendants counsel said she was not prepared to discuss what efforts had been made to produce this electronically stored information, or what had been retained or not retained. *See* Matz Decl., ¶29 and Kundar Decl. ¶24. When Plaintiff's counsel followed up by email to ask what was done to ascertain whether this information was available Defendants counsel said "Nothing more to say". *See* Matz Decl., ¶29, Ex. 35 and Kundar Decl. ¶24.

On June 20, 2018, Defendants served an amended written response to the First Demands. *See* Matz Decl. Ex. 22; R&R Pp. 16. Again, Defendants' did not disclose that Plaintiff's email had been deleted, and instead further misled Plaintiff to believe that documents existed and had been reviewed, by expounding on their objections that production would be burdensome. *See* Matz Decl., Ex. 22 Request No. 26 (in response to the request for a table-style printout of Plaintiff's email Defendants based their objection on the misleading premise that "Plaintiff was employed by G-Star for more than four (4) years and sent and received nearly 100,000 emails."). Defendants also suggested that the parties use keyword search terms on Plaintiff's email to identify other relevant documents, despite the fact that Defendants knew that not all the emails even existed anymore and that the majority of the content of Plaintiff's email did not exist. *See* Matz Decl., Ex. 9; Kundar Decl. ¶24; van der Bent Decl. ¶ 11 ("only a few lines of the text show in the archival form").

Counsel for Plaintiff only learned that Defendants were claiming that the SAP information was allegedly deleted much later when Defendants' counsel disclosed that it had been deleted it in her portion of a draft of the July 18, 2018 joint letter. *See* Matz Decl., ¶36. However, in drafting the parties' joint letter to Judge Gardephe, dated July 18, 2018, Defendants still did not disclose that Plaintiff's entire email account had been deleted, and instead again misled Plaintiff and the Court by

making the argument that it would be burdensome to produce emails, claiming that they had "been working with their e-discovery consultant[5] to produce relevant documents from Plaintiff's email file and eight other custodians' email files. **Plaintiff's email file alone contains more than 100,000 email chains.**" *See* Matz Decl., Ex. 36 (emphasis added).

### 3. Defendants' Finally Disclose the Destruction of Emails and Other ESI

Following the submission of the joint letter, the parties' discovery dispute was referred to Judge Wang. [Dckt. Nos. 28-29]  Pursuant to Judge Wang's July 24, 2018 Order, on July 26, 2018, the parties held an additional meet and confer prior to the August 2 Conference.  [Dckt. No. 28].  It was only on that July 26, 2018 call that Defendants' counsel finally disclosed that Plaintiff's entire email account had been deleted.  *See* Matz Decl. ¶31, Exs. 23 and 24; Adelman Decl. ¶6; R&R Pp. 12.  At the time Ms. Kundar said that some part of the email had been recovered, but was not prepared to discuss what they had been able to recover.  *See* Matz Decl. ¶31; Adelman Decl. 6.  Ms. Kundar further misled Plaintiff by claiming on that call that she had 'just recently' been made aware of the deletion of the emails.  Ms. Kundar claimed that the emails had been deleted as part of a policy, wherein Defendants deleted emails two months after termination unless a litigation hold is put in place.[6]  Matz Decl. ¶32, Ex. 23 (follow up email stating that it was Defendants' policy that "mailboxes are deleted two months after the termination date unless blocked by HR or Legal[.]");  R&R Pp. 16-17.  Ms. Kundar also provided a copy of Defendants alleged written policies, which contain no such policy.  *See* Matz Decl., Ex. 23-24; R&R Pp. 16.

At the August 2, 2018 Conference, Defendants' counsel made the factual representation to the Court that "on June 3 the e-mail of Ms. Cruz was deleted." *See* Matz Decl., Ex. 15 Pp. 56:3-15.

Ms. Kundar also misled the Court by claiming she did not know until "recently", although it came to light after the motion was filed that she had in fact known since March of 2018—for five months.  *See* Matz Decl., Ex. 15, pp. 6:25-7:3; Kundar Decl. ¶¶24, 27-30, 33.  In addition,

---

[5] Defendants allegedly retained this consultant sometime in May of 2018.  [Dckt. No. 23].

[6] At the August 2, 2018 conference, Ms. Kundar contradicted this statement and said that usually after 2 months the employee's email is shut down, not deleted, and that it was her understanding that Ms. Cruz's email was *not* shut down.  8/2/18 Tr. Pp. 55:15-18.

Defendants counsel also represented that Plaintiff's data from SAP, a software she used while employed, that should not have been deleted, was deleted in December of 2017, after this lawsuit was filed. *See* Matz Decl., Ex. 15 Pp. 57:1-57:14; Cruz Decl. ¶7. Defendants' counsel claimed that after the deletion of the emails: "the company proceeded to try to reconstruct, because once they were doing their responses, they realized they had to see what could be done, and they were not able to reconstruct fully the files, some of which went back quite a few years." *See* Matz Decl., Ex. 15 Pp. 57:1-14. In describing what was able to be recovered, counsel for Defendants advised that the emails are in two types of formats, some emails were able to be fully recovered, some emails say that they have been archived, and only a shortened version is available. *See id.* Ex. 15 Pp. 7:14-8:6.

Pursuant to Judge Wang's Order, on or around August 9, 2018, Defendants delivered a thumb drive containing a .pst file purported to be Plaintiff's email file (the "PST File"). *See* Matz Decl., Exs. 25 and 36; Adelman Decl. ¶7; R&R Pp. 18. Out of the 114,812 emails contained in the .pst file, the vast majority were not recovered. Approximately 109,117, i.e. over 95% of the emails in the PST File, do not appear to have been fully recovered as they are in the cut off format that Ms. Mevorah described at the August 2, 2018 conference, meaning that the email was not recovered at least in part. *See* Matz Decl., ¶36 and Ex. 26.[7] In addition, there are at least 200 emails that are emails that are virtually blank. *See* Matz Decl., Ex. 34; R&R Pp. 18. It is clear that information is missing by virtue of a simple comparison between the meagre handful of emails that Plaintiff preserved, or Defendants printed from another custodian and the 'copy' to the extent it even exists in Plaintiff's PST. By way of example, in the email where Plaintiff's "ass" was the subject of discussion, which was obtained from another custodian, the copy in Plaintiff's .pst file does not contain those statements. *See* Matz Decl., ¶37 and Exs. 6 and 27. Moreover, the First HR

---

[7] In the R&R the Court noted that the CD of Exhibit 26 with the 109,117 emails in archived format that provided was itself corrupted thus the Court was unable to view the disc's contents. *See* R&R pp. 18, n.9. The Court further noted that the parties were not disputing that there was a loss of information in the archived format. *Id.* Indeed, Defendants have described these archived emails as only containing "some of the content of the message". *See* Matz Decl., Ex. 15 Pp. 7:14-8:6. Nevertheless, as Plaintiff was not aware that the CD was corrupt, Plaintiff is submitting a duplicate copy of Exhibit 26, which was previously served on Defendants and submitted to this Court as part of the courtesy copy of Plaintiff's original moving papers that are being provided.

Complaint similarly appears as a cut off email in the PST File. *See* Matz Decl., Exs. 29 and 30. *See also* Exs. 6 and 27, 13 and 38, and 39 and 40. In addition, there are many emails that have been completely destroyed and were never recovered in whole or in part. By way of example, at least an entire month of Plaintiff's email is missing, as there are no emails whatsoever after December 31, 2016, even though Plaintiff was not terminated until January 27, 2017.[8] Plaintiff has no way of showing what was in these blank emails, what the content of the cut off emails is, or what other emails were destroyed and are simply missing in their entirety and are unrecoverable.

### 4. Judge Wang's Findings Supporting the Elements of Spoliation and Intent Warranted Remedy Under Fed. R. Civ. P. 37(e)(2)

Following submission of Plaintiff's Motion for Sanctions, Judge Wang's R&R correctly found that Plaintiff had satisfied the elements required to be entitled to discovery sanctions on the basis of spoliation under Fed. R. Civ. P. 37(e)(2), which provides that:

> (e) Failure to Preserve Electronically Stored Information. If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court: (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may: (A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment.

Specifically, based upon the above facts, Judge Wang was correct in her findings that: (i) Defendants had a duty to preserve no later than October of 2016 (R&R pp. 22); (ii) Defendants' duty extended, at a minimum, to Plaintiff's email communications and SAP data (*Id.* pp. 24); (iii) that despite having reason to anticipate litigation in October of 2016, Ms. Kundar did not instruct Defendants to impose a litigation hold until late July 2017, nearly a year later (*Id.* pp. 24-25); (iv) by the time a litigation hold was implemented, Defendants had already deleted Plaintiff's email account (*Id.* pp. 25); (v) that Defendants deleted Plaintiff's SAP account in December 2017 <u>despite</u>

---

[8] With one unexplained exception of an email, dated April 13, 2018, forwarding a 2016 email from Plaintiff's inbox to another user. *See* Matz Decl. ¶38 and Ex. 28. This email was contained within the PST File, which was supposed to be Plaintiff's email account, but was an email that was sent after Plaintiff was fired, and after her account was supposedly deleted.

the litigation hold (*Id.* pp. 25); (vi) that such deletion "reflects that neither Defendants nor their counsel took 'reasonable steps' to preserve Plaintiff's SAP account even *after* Plaintiff's Complaint had been filed" (*Id.* pp. 25); (vii) Notwithstanding Ms. Kundar's active participation in advising Defendants as early as October 2016, at no time did Ms. Kundar instruct Defendants to impose a litigation hold (*Id.* pp. 25); (viii) that Ms. Kundar's "ignorance of Plaintiff's SAP files (and both her and in-house counsel's ignorance of Plaintiff's emails' deletion until March 2018) indicates that neither counsel monitored Defendants' compliance with the litigation hold as required" (*Id.* pp. 25); (ix) that Ms. Kundar's efforts to monitor compliance which were one call and two emails, "took place months after the ESI was destroyed, and months after Ms. Kundar had reviewed Plaintiff's internal complaint and had advised her clients on a response", which were "simply insufficient" (*Id.* pp. 25); (x) As to the question of whether "the missing information can be restored or replaced through additional discovery.  Based upon the information before the Court, it appears that it cannot." (*Id.* pp. 26); (xi) Prejudice to Plaintiff from the deletion of her email and SAP account is apparent. Approximately 95% of Plaintiff's emails are in the archived format. (*Id.* pp. 28); (xii) Plaintiff's emails in the archived format show the sender and the timestamp; they may also show the recipient. They do not show all of the content. The information that would have been contained in the full emails is probative of the hours Plaintiff worked and the nature of her employment, and is thus relevant to Plaintiff's FLSA and NYLL claims. (*Id.* pp. 28); (xiii) To prosecute her labor law claims, Plaintiff needs not only timestamps, but also the content of her emails, which would show the nature of Plaintiff's work and her primary duties and responsibilities. Without the content, Plaintiffs' ability to show the work she performed during those hours and to defend against Defendants' exemption defense is diminished. (*Id.* pp. 28); (xiv) Similarly, Plaintiff needs the content of her emails to prove her human rights law claims, specifically to show, among other things, the quality of her work, interactions with clients and co-workers, treatment by supervisors, interest in promotions, disparate treatment, and retaliatory acts. (*Id.* pp. 28-29); (xv) Defendants' actions deprived Plaintiff of this information, and in doing so, hampered her ability to prove her claims. By deleting this information, Defendants denied Plaintiff the ability to corroborate her

11

testimony at trial, plainly weakening her case. Neither Defendants' production (2,541 pages of complete emails and 1,000 pages of daily log-in information) nor the fact that Plaintiff produced some of her emails in complete form eliminates this prejudice. (*Id.* pp. 29); (xvi) circumstances surrounding Defendants' spoliation of ESI support an inference that Defendants acted with the intent to deprive Plaintiff of evidence. (*Id.* pp. 29); (xvii) Plaintiff's emails and SAP information were lost because Defendants failed to take *any* steps to preserve them prior to their deletion. (*Id.* pp. 29); (xviii) Such failure "is particularly troubling because the particular individuals who received and discussed Plaintiff's first complaint to Human Resources—and consulted outside litigation counsel on a proper response—were the same individuals creating lists of reasons to terminate Plaintiff just two weeks later" (*Id.* pp. 30); (xix) that "Defendants' failure to impose a litigation hold before July 2017 was 'so stunningly derelict as to evince intentionality'" (*Id.* pp. 30); (xx) the Court's finding of bad faith "is buttressed by [the defendants'] conduct in connection with litigating the deletion issue." (*Id.* pp. 31); (xxi) Plaintiff's counsel and the Court expended significant resources in motion practice and discovery conferences which would have been avoided had Defendants properly investigated or timely disclosed the deletion (*Id.* pp. 31); (xxii) Defendants' counsel was made aware of the deletion in March 2018, yet, Defendants' counsel—knowing that Plaintiff's emails had been deleted—attended three meet and confers, appeared at a status conference before Judge Gardephe, and appeared for two telephonic pre-settlement conferences before this Court, never disclosing the deletion. (*Id.* pp. 31); (xxiii) As late as July 18, 2018, in a joint letter to Judge Gardephe, in which Plaintiff requested a pre-motion conference in anticipation of moving to compel production of Plaintiff's email file, (ECF 27), Defendants' counsel did not disclose the Plaintiff's emails had been deleted. (*Id.* pp. 31); (xxiv) Defendants not only failed to disclose the deletions, but also misrepresented to Plaintiff and the Court (by omission) their ability to produce Plaintiff's emails. (*Id.* pp. 31-32); (xxv) Defendants interposed objections that suggested the existence of Plaintiff's emails and that counsel had reviewed those emails, when in fact Defendants knew the emails no longer existed. (*Id.* pp. 32); (xxvi) Defendants also proposed using key word search terms, despite knowing that most of the content of Plaintiff's emails had

been deleted, and thus using search terms would have been futile. (*Id.* pp. 32); (xxvii) Taken together, Defendants' litigation conduct evinces an intent to deprive Plaintiff of use of the ESI. (*Id.* pp. 32); (xxviii) the timing of the deletion is instructive and suspect, in that (a) Defendant deleted the account only 38 days after Plaintiff's termination, despite their purported policy of deleting terminated employee's email accounts after "two months", and furthermore Plaintiff had not returned the release of claims offered with her severance package; and (b) that Plaintiff's SAP information was deleted after Plaintiff's Complaint had been field and after litigation hold had been implemented (*Id.* pp. 32); (xxix) All the above, when considered together, lead the Court to conclude that the loss of the at-issue ESI was beyond the result of mere negligence (*Id.* pp. 32); (xxx) Defendants' actions present sufficient circumstantial evidence from which to infer that they intended to deprive Plaintiff of the relevant ESI for use in litigation (*Id.* pp. 33); and (xxxi) That "[t]his loss is especially damaging due to the nature of the claims in this case, which so often come down to credibility, and where corroborating documents are critical." (*Id.* pp. 34). Based upon these findings, which Plaintiff agrees with, Judge Wang was also correct in recommending that sanctions under Fed. R. Civ. P. Rule 37(e)(2) were warranted and justified, including the recommended sanction of adverse inference instructions.

### STANDARD OF REVIEW

Rule 72(b)(3) instructs the district judge to "determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also Nelson v. Smith*, 618 F. Supp. 1186, 1190 (S.D.N.Y. 1985). "[T]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

### PLAINTIFF'S SPECIFIC LIMITED OBJECTIONS

Plaintiffs do not object to the R&R's recommendations concerning the majority of factual findings or conclusions that the ESI that should have been preserved was lost because Defendants failed to take reasonable steps to preserve it and it cannot be restored or replaced through additional

discovery, that Plaintiff has been prejudiced[9] and that Defendants acted with the requisite intent to

deprive under Fed. R. Civ. P. 37(e)(2). Indeed, Plaintiff agrees that with those findings including

the recommendation that Plaintiff be awarded adverse inferences, costs and attorneys' fees.

Plaintiff's limited objections are only to the portions of the R&R that (i) recommended that

an order striking Defendants' answer or affirmative defenses is not justified; (ii) that did not grant

Plaintiff's request for preclusion orders; (iii) the Court's consideration of Defendants' preservation

efforts; and (iv) the Court's consideration of Defendants attempt to change the date they admitted to

having deleted Plaintiff's email.

## I.   <u>The Remedy of Adverse Inference Does Not Fit the Wrong</u>

In light of the foregoing egregious and intentional conduct by Defendants, coupled with the

prejudice that Plaintiff has suffered, Plaintiff respectfully objects to the R&R's recommendation

that a default judgment, striking Defendants' answer and affirmative defenses and/or preclusion

orders were not justified here. The facts here and recommendations in the R&R warrant a finding

that in addition to adverse inferences, default judgment, striking Defendant's answer and/or

affirmative defenses, and/or preclusion orders are appropriate to address the evidentiary gap that

spoliation has caused. Given the huge loss here, adverse inferences alone will not restore Plaintiff

to the position she would have been in had the evidence not been destroyed.

The Court has found that an instruction for adverse inference is appropriate where: (i) the

spoliating party failed to take reasonable steps to preserve electronically stored information; (ii) was

found to have the intent to deprive; (iii) the lost information was recovered in part and support the

non-spoliating party's claims or was insignificant compared to the other evidence available to

support the non-spoliating party's claims. *See Ottoson v. SMBC Leasing & Fin., Inc.*, 268 F. Supp.

3d 570, 582–83 (S.D.N.Y. 2017) (granting adverse inference as the spoliating party failed to

preserve emails correspondence with three non-parties, was found to have intentionally deleted the

---

[9] "Subdivision (e)(2) does not include a requirement that the court find prejudice to the party deprived of the information. This is because the finding of intent required by the subdivision can support not only an inference that the lost information was unfavorable to the party that intentionally destroyed it, but also an inference that the opposing party was prejudiced by the loss of information that would have favored its position. Subdivision (e)(2) does not require any further finding of prejudice." Fed. R. Civ. P. 37, 2015 Amendment Advisory Committee Notes.

emails, and the plaintiff was able to retrieve the email correspondence from one of the third parties and the retrieved information supported the non-spoliating party's defenses); *Brown Jordan Int'l, Inc. v. Carmicle, No*. 14-cv-60629, 2016 WL 815827, at *37 (S.D. Fla. Mar. 2, 2016) (imposing adverse inference sanctions against defendant for spoliation of evidence because the court found that defendant failed to take reasonable steps to preserve electronically stored information on his personal and company-owned devices, acted with the intent to deprive and the missing evidence was not crucial to the other parties claims).

However here, unlike the foregoing cases, the adverse inferences alone do not redress the loss as the intentional destruction was far greater than those cases.  Under Rule 37(e)(2) "[t]he remedy should fit the wrong."  *CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 501 (S.D.N.Y. 2016) (citing to the 2015 Amendment Advisory Committee Notes).  Courts have noted the similarity of this to the standard that the sanction should be designed to: (1) deter parties from spoliating, (2) place the risk of erroneous judgment on the spoliator, and (3) restore the prejudiced party to the same position he would been in absent the spoliation of evidence. *See also CAT3, LLC*, 164 F. Supp. 3d at 501–02 (*citing West v. Goodyear Tire & Rubber Co*., 167 F.3d 776, 779 (2d Cir.1999) (Sanctions are designed to "restore the prejudiced party to the same position he would been in absent the wrongful destruction of evidence by the opposing party")). *Metropolitan Opera Ass'n, Inc v. Local 100, Hotel Employees & Rest. Employees Int'l Union*, 212 F.R.D. 178, 230 (S.D.N.Y. 2003), *adhered to on reconsideration*, No. 00 CIV. 3613 (LAP), 2004 WL 1943099 (S.D.N.Y. Aug. 27, 2004) ("adverse inference or other lesser sanction is insufficient to "restor[e] the evidentiary balance… because it is impossible to know what the [plaintiff would have found if the [defendant] and its counsel had complied with their discovery obligations from the commencement of the action"… "[T]here is no meaningful way in which to correlate [defendants'] discovery failures with discrete issues in the case." [citation omitted]).

Here, as a direct result of Defendants' intentional destruction of ESI, nearly all of Plaintiff's critical emails and SAP information was lost. *See* R&R p. 16 – 19. That information has not been and cannot be fully retrieved. *See Id.* As such, while an adverse inference is beneficial to the

Plaintiff, it does not redress the extreme prejudice she has sustained as a result of Defendants' spoliation.  This is not an instance where the information that was lost was "relatively unimportant or lesser measures such as those specified in subdivision (e)(1) would be sufficient to **redress the loss."**  Fed. R. Civ. P. 37(e)(2) 2015 Amendment Advisory Committee Notes (emphasis added).

There is no way of knowing the extent of what is missing from the PST file, but it is unquestionable that the majority of the PST file has been destroyed and that much of the SAP data is still missing.  The PST file allegedly 'recovered' by Defendants is clearly only a small portion of what previously existed, which means that there has been a significant and permeant loss of Plaintiff's emails and SAP data.  The SAP data that was recovered is woefully insufficient as it only shows the order entry, and does not contain other relevant information such as login times, or evidence of other use, such as running reports, which Plaintiff often did, and is missing Plaintiff's data from 2012 and 2013. *See* Matz Reply Dec. Ex. 43.  As for the emails, approximately 95% of what was allegedly 'recovered' are cut off and missing large portions of the emails.  *See* Matz Decl. ¶36, Ex. 26; R&R p. 26 ¶2; van der Bent Decl. ¶ 11 ("only a few lines of the text show in the archival form").  Indeed, there are at least another 200 emails that are virtually blank.  *See* Matz Decl. ¶34; R&R p. 18 ¶2.  Moreover, there are an unknown amount of emails that been permanently destroyed.  At least a full month of emails from Plaintiff's last month of work, and potentially many more, are completely missing. *See* Matz Dec. ¶38. There is no way of knowing the extent of what is missing, but it is unquestionable that the majority of the content of the PST file has been destroyed.  Moreover, the meager 2,665 pages of fully preserved emails that have allegedly been produced by the parties, many of which are duplicates, does not replace the email account, which had well over 114,000 emails, that we know of--it is barely 2% of the 118,536 pages from the incomplete .pst file.

Because of Defendants intentional spoliation, Plaintiff has been put in a position where she cannot fully prosecute her claims or rebut Defendants' defenses. Defendants have preserved some of what they wanted (*see* Statement of Facts §1, Reply Matz Decl., Ex. 42 and 43), and cherry-picked emails from other custodians to support their defenses, but Plaintiff has been permanently

prejudiced as this destruction of relevant information will hamper her ability to support her claims and rebut Defendants' contentions.

Unlike the cases such as *Residential Funding* [10]*, where emails were not destroyed, but rather were untimely produced, an adverse inference is insufficient to "restor[e] the evidentiary balance," because it is impossible to know what the Plaintiff would have found if Defendants had properly preserved relevant ESI when they were obligated to do so. *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 108 (2d Cir. 2002).

Plaintiff's email account and SAP information was a record of her history of employment with Defendants, the hours she worked, that Defendants knew Plaintiff was working overtime, the type of work Plaintiff was performing, her primary duties, her day to day activities, her interactions with others, whether she had authority to hire and fire or whether her recommendations were given particular weight, whether she actually had authority to direct the people she supervised the way she was treated, her work ethic, experience, the quality of her work, interactions with clients and co-workers, treatment by supervisors, interest in promotions, disparate treatment, materially adverse employment changes she suffered, Defendants' retaliatory acts following the filing of her HR complaints, and rebutting Defendants' pretext for terminating Plaintiff.

As a result of the destruction, Plaintiff has lost access to much of the evidence that would prove and/or corroborate her allegations, give her the ability to prove damages, and rebut against Defendants' defenses.  In this age, ESI, including login information and email serves as a neutral storyteller that can be critical in determining the merits of a claim relating to employment claims.  But because of Defendants' intentional acts, Plaintiff will never have access to her full email, which is relevant to all of her claims and rebuttal of Defendants' defenses in this action.  Instead, Plaintiff is limited to wholly incomplete attempted reconstruction of her email account and Defendants hand-picked emails that they produced from other custodians, which they feel are helpful to their case.

---

[10] There is no dispute that part of the holding in *Residential Funding* i.e. that adverse inference instructions could be based on a finding of negligence or gross negligence has been superseded by Rule 37(e)(2)'s requirement of a finding of intent.  The R&R correctly found that Defendants acted with the requisite intent to deprive here to warrant sanctions under Rule 37(e)(2).  Given that the requisite intent standard has been satisfied here, *Residential Funding* is still useful with regards to crafting of an appropriate remedy.

Therefore, while justified, an adverse inference is not enough 'fit the wrong' here.

## II.   Defendants' Intentional Spoliation of ESI Warrants Entry of Default Judgment

Plaintiff respectfully objects to the finding that default judgment is not justified and respectfully submits that an order striking the Defendants' answer and entering default be issued. Plaintiff should not suffer where Defendants intentionally destroyed evidence, but preserved the information they want to defend this case such as Plaintiff's absence and attendance records, emails documents related to their justification for termination and exemption defense.

Striking a pleading and entering a default judgment against Defendants, while a drastic remedy, is appropriate here where the spoliation was willful, concealed and there is no other adequate remedy to restore Plaintiff to the position she would be in if the evidence had not destroyed. *Miller v. Time-Warner Communications, Inc.*, 1999 WL 440781 (S.D.N.Y. 1999).  The entry of judgment against a defendant should only be used in extreme situations wherein the court finds willfulness, bad faith, or any fault on the part of [the litigant]." *Valentine v. Museum of Modern Art*, 29 F.3d 47, 49 (2d Cir.1994) (*quoting Bobal v. Rensselaer Polytechnic Inst.*, 916 F.2d 759, 764 (2d Cir.1990) (internal quotation marks omitted, alteration in original)). However, that does not mean that courts should avoid imposing harsh sanctions where they are warranted. *Jones v Niagara Frontier Transp. Auth. (NFTA)*, 836 F2d 731, 735 (2d Cir 1987) (*quoting Cine Forty– Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1068 (2d Cir.1979)).

As set forth above, the facts show that the R&R correctly found that Defendants' acted with the intent to deprive plaintiff of the email and SAP data's use in the litigation.   As noted in the Advisory Committee notes on the 2015 amendment the remedy should fit the wrong.  In situations such as this, where there is no other remedy to put a plaintiff in the position it would have been in but for the spoliation a default judgment is warranted. *See e.g. Miller*, 1999 WL 440781.[11]  That is especially true where, as opposed to situations where the parties knew exactly what had been

---

[11] Although *Miller* was decided prior to the 2015 amendment to Rule 37, it similarly noted that such a drastic sanction would only be imposed "when the spoliation was willful". *Miller*, 1999 WL 440781, at *5.

destroyed, massive spoliation like Defendants spoliation here involves "erasures" where it is unknown what a party and their counsel erased and what was lost. *Miller*, 1999 WL 440781.  That same conclusion was reached under similar circumstances by the Court in *Metropolitan Opera*.[12]

In *Metropolitan Opera,* the Court on a discovery motion granted default judgment under Rule 37 as the defendant intentionally deleted relevant emails when it had an obligation to preserve them and repeatedly represented that all responsive documents had been produced. *Metropolitan Opera Ass'n, Inc.*, 212 FRD at 230. Among other things, the Court identified multiple instances of bad faith actions including: (i) repeated assurances from counsel that all responsive documents had been produced, when they had not been; (ii) counsel failed to initiate and monitor a proper litigation hold; and (iii) failure of the Defendants to make all necessary parties who may have access to relevant documents aware of the litigation hold. *Metropolitan Opera Ass'n, Inc.*, 212 FRD at 181-82. While the Court noted that "any one of these discovery failures, standing alone, would not ordinarily move a court to impose the most severe sanction, ... the combination of outrages ... impels the most severe sanction in order to (1) remedy the effect of the discovery abuses, viz., prejudicing the Met's ability to plan and prepare its case, (2) punish the parties responsible and (3) deter similar conduct by others." *Id.* at 182.

Based on the above, the Court held that lesser sanctions would not be adequate for addressing the widespread abuse and granted plaintiffs' motion for default judgment, particularly in light of the fact that, numerous critical documents were irretrievable such that it was impossible to know what the Plaintiff could have found. *Metropolitan Opera Ass'n, Inc.,* 212 F.R.D. at 230. Thus, the Court concluded that, "a lesser sanction would not be adequate to penalize the Union and its counsel here or to deter others from similar misconduct in the future." *Id.*

Similarly, to *Metropolitan*, Defendants intentionally deleted Plaintiff's entire email account and SAP data, after they were under an obligation to preserve.   Defendants then also *inter alia,* (i) attended three meet and confers, appeared at a status conference, and appeared for two telephonic

---

[12] *Metro. Opera Ass'n, Inc.*, similarly noted that dismissal should only be used when a court finds willfulness. *Metropolitan Opera Ass'n, Inc.*, 212 FRD at 220.

conferences without disclosing the deletion of the Plaintiff's work email account; (ii) repeatedly misrepresented to Plaintiff and the Court their ability to produce Plaintiff's email and insinuated the existence of Plaintiff's emails in multiple written responses and suggested key word searches, when the emails no longer existed; (iii) failed to initiate a proper or timely litigation hold; and (iv) failed to make all necessary parties aware of the litigation hold, the result of which was the later deletion of the SAP data.  As in *Metropolitan,* these actions taken together with the massive data loss, warrant the issuing of an order striking Defendants' answer and entering default.

Under the rubric of Rule 37(e)(2), Courts have also issued default judgments in similar situations where the spoliating party lost information to intentionally deprive the other party from the information's use. *See Glob. Material Techs., Inc. v. Dazheng Metal Fibre Co.*, 2016 WL 4765689, at *1 (N.D. Ill. Sept. 13, 2016); see also TLS Mgmt. & Mktg. Servs., LLC v. Mardis Fin. Servs., Inc.,, 2018 WL 3673090, at *7 (S.D. Miss. Jan. 29, 2018)("default judgment is appropriate only when "destruction of evidence was of the worst sort: intentional, thoroughgoing, and (unsuccessfully) concealed.")

Lesser sanctions than default judgment will not fully restore Plaintiff to the position she was previously in.  Indeed, G-Star's "destruction of documents, by omission or commission, has made that preferred path impossible". *Metropolitan Opera Ass'n, Inc.*, 212 FRD at 182. As discussed in the R&R, necessary and substantial information found in the emails and the SAP data are critical to this case. *See* Matz Decl. Ex. 37 ¶¶ 221-246 and Cruz Decl. ¶¶5-6;  R&R p. 28 – 29. The emails and SAP cannot be replaced. *See* R&R p. 26.  Due to Defendants' conduct and in the face of multiple inquires through meet and confers and conferences by Plaintiff's counsel, any other sanction besides default judgment would not be adequate to resolve the evidentiary losses the Plaintiff is suffering from and punish G-Star for their conduct. *Miller v. Time-Warner Commc'ns, Inc.,* No. 97 CIV. 7286 (JSM), 1999 WL 739528, at *1 (S.D.N.Y. Sept. 22, 1999).

Further, striking a pleading and entering a default judgment against Defendants, while a drastic remedy, is appropriate here where the spoliation was willful and there is no other adequate remedy to restore Plaintiff to the position she would be in if the evidence had not destroyed. *Miller*,

1999 WL 440781.  *See also* Fed. R. Civ. P. 37(e)(2)(C).  This is not an instance where the information that was lost was "relatively unimportant or lesser measures such as those specified in subdivision (e)(1) would be sufficient to redress the loss."  Fed. R. Civ. P. 37(e)(2) 2015 Amendment Advisory Committee Notes.

As set forth in the R&R, the deletion of Plaintiff's email and related ESI was done intentionally and Plaintiff has been prejudiced. *See* R&R p. 29 – 33. As the court pointed out in *Miller*, 1999 WL 440781, cases where lesser sanctions have been appropriate, the parties knew exactly what had been destroyed and it was not clear if the evidence was destroyed with the intent to make it unavailable, as opposed to "erasures" that were intentional and where it is unknown what was erased.  Here, Plaintiff does not know the contents of the destroyed and damaged emails, nor can they be recovered. *See* R&R p. 26 – 28.  There is also no evidence that the complete SAP data can be recovered and appears to be lost forever.  *See Id.*

For the foregoing reasons*,* striking Defendants' answer and entering default is appropriate.

### III.   <u>Striking Defendants' Affirmative Defenses and/or Preclusion Orders Are Also Justified as an Alternative Additional Remedy</u>

In the event the Court declines to grant default judgment against Defendants, Plaintiff also respectfully objects to the Court not granting Plaintiff an order striking some or all of Defendants' affirmative defenses and/or preclusion orders in addition to the adverse inferences already granted.

Under Rule 37(e)(1) upon finding prejudice to another party from loss of the information, the Court may order measures no greater than necessary to cure the prejudice.  Under 37(e)(1) it "may be that serious measures are necessary to cure prejudice found by the Court, such as forbidding the party that failed to preserve information from putting on certain evidence, permitting the parties to present evidence and argument to the jury regarding the loss of information, or giving the jury instructions to assist in its evaluation of such evidence or argument . . . " *See* Fed. R. Civ. P. 37(e) 2015 Amendment Advisory Committee Notes.[13]

---

[13] The Advisory Committee Note that "other than instructions to which subdivision (e)(2) applies" is only where the requisite intent under (e)(2) has not been found.  The Advisory Committee further noted that "Care must be taken, however, to ensure that curative measures under subdivision (e)(1)

Preclusion would be appropriate remedy, though sometimes considered extreme, "to mitigate the specific prejudice that a party would otherwise suffer" as a victim of spoliation." *Taylor v City of New York*, 293 F.R.D. 601, 615 (S.D.N.Y. 2013) (*citing Outley v. New York,* 837 F.2d 587, 591 (2d Cir.1988); *In re WRT Energy Sec. Litig.*, 246 FRD 185, 200 (S.D.N.Y. 2007); *see also West*, 167 F3d at 780 (advising a district court to consider the sanction in tandem with other sanctions as a way to "fully protect" an injured party from prejudice)). In *Lokai Holdings*, under 37(e)(1) the Court found that plaintiff was: (i) prejudiced by defendants failure to preserve relevant ESI; (ii) the ESI cannot be fully restored or replaced. *Lokai Holdings LLC v. Twin Tiger USA LLC*, No. 15CV9363 (ALC) (DF), 2018 WL 1512055 (S.D.N.Y. Mar. 12, 2018).  Even without a finding of intent, the Court held that a preclusion order was appropriate precluding the defendant from "offering testimony at trial as to the content of any preserved emails…, including any testimony suggesting that such emails would have supported any elements of their defenses or counterclaims".  *Id.*

In *Jenkins*, the plaintiff moved for sanctions under Rule 37(e) for the defendants' destruction of video evidence, where the court found grave prejudice as the video was the "best and most compelling evidence." *Jenkins v. Woody*, 2017 WL 362475, at *18. The Court held that the preclusion of "any evidence or argument that the contents of the video corroborated the Defendants' version of events" was warranted. *Id.*

Here the deletion of relevant ESI should have been preserved, was deleted because of Defendants failure to take reasonable steps and it cannot be restored or replaced.  Furthermore, here there is both prejudice sufficient to support a finding under 37(e)(1) and a finding that Defendants acted with the intent to deprive, sufficient to support sanctions under (e)(2).  *See* R&R Pp. 33.  As such, if the Court will not enter default, the Court should strike those affirmative defenses and

---

do not have the effect of measures that are permitted under subdivision (e)(2) only on a finding of intent to deprive another party of the lost information's use in the litigation. An example of an inappropriate (e)(1) measure might be an order striking pleadings related to, or precluding a party from offering any evidence in support of, the central or only claim or defense in the case." *Id.* However, where as here, the requisite finding of intent to deprive has been satisfied, the Court is free to craft a remedy that is appropriate without concern that an (e)(1) measure may have the effect of measures permitted under (e)(2).

preclude Defendants from introducing any evidence in support of such defenses, where the intentional spoliation of evidence has prejudiced Plaintiff, which Plaintiff respectfully submits is the vast majority of issues and defenses.

Here, Plaintiff will not be able rebut Defendants' defenses and proffer evidence to contradict the evidence that Defendants have strategically maintained to support their claims and theories. As such, if default judgment is not found to be appropriate, in addition to maintaining the adverse inferences, Plaintiff should be granted an order striking some or all of Defendants' affirmative defenses and/or precluding denying Defendants from entering any evidence in support of some or all of their defenses to Plaintiff's claims. Specifically, Plaintiff will not be able rebut Defendants' defenses and proffered evidence to contradict the evidence that Defendants have strategically maintained to support their claims and theories, including those related to alleged compliance with, and lack of willful violation of the FLSA and/or NYLL (*See* Matz Decl. Ex. 37 ¶¶221, 224, 229, 230, 232, 234 "Answer"), that Plaintiff did not work more than forty hours, and Defendants lacked knowledge of same and that Plaintiff falsely reported her hours (*See* Answer ¶¶ 225, 226, 227, 233), that Plaintiff is exempt (*See* Answer ¶¶228, 231), that Defendants lack of intentional wrongdoing or departure from standard of action (*See* Answer ¶222-223, 243, 244), that Defendants did not engage in discriminatory conduct, and were not aware of same (*See* Answer ¶¶ 235, 236), that Defendants relied on legitimate non-discriminatory, non-retaliatory factors in taking employment action towards Plaintiff (*See* Answer ¶¶237, 238, 239, 240, 241), that there is no connection between adverse employment actions and protected activities (*See* Answer ¶242), that Plaintiff voluntarily participated in discriminatory comments (*See* Answer ¶245), that Plaintiff failed to exhaust procedural remedies (*See* Answer ¶¶246), and other related defenses.  Striking these defenses and/or issuing orders of preclusion precluding Defendants from introducing evidence related to same, in addition to the adverse inferences, would be appropriate to remedy some of the prejudice the Plaintiff has sustained due to Defendants' spoliation and try to restore Plaintiff to the same position she would have been in absent the Defendants' conduct. *See CAT3, LLC*, 164 F. Supp. 3d at 501–02 (*citing West*, 167 F.3d at 779).

IV.     **Plaintiff Objects to the Consideration of the Majority of Kundar's Declaration Concerning Defendants' Alleged Preservation Efforts**

Plaintiff objects to the Court's consideration of Defendants ambiguous claims that they provided lists and put holds on 'various accounts', vague statements that they spoke about the need to preserve 'evidence' and self-serving, selected excerpts from communications that were not produced.  *See* Kundar Decl. ¶15-18.  It is well-established that "the attorney-client privilege cannot at once be used as a shield and a sword." *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir.1991). The "at issue" doctrine precludes a party from "disclos[ing] only self-serving communications," while "bar[ring] discovery of other communications that an adversary could use to challenge the truth of the claim." *In re Adelphia Commc'ns Corp.*, 2007 WL 601452, at *3 (Bankr. S.D.N.Y. Feb.20, 2007). *See also Volcan Grp., Inc. v. T-Mobile USA, Inc.*, 2011 WL 6141000, at *3 (W.D. Wash. Dec. 9, 2011) (party had to produce privileged documents relied upon in motion for spoliation).  Ms. Kundar has not turned over any of these alleged communication, nor did she provide a privilege log for communications with in house counsel, which was requested. *See* Matz Decl. Ex. 21, p. 2.  As such the Court should have excluded all such evidence and found that no efforts had been made to preserve relevant ESI and excluded evidence about litigation holds.

V.      **Plaintiff Objects to the Conclusion that Plaintiff's Email was Deleted on March 6, 2017**

Plaintiff also respectfully objects to the finding that Plaintiff's email was deleted on March 6, 2017 not June 3, 2017.  At the August 2, 2018 Conference, after apparently having known about the deletion for 5 months but not disclosing it, Defendants' counsel made a factual representation to the Court that "on June 3 the e-mail of Ms. Cruz was deleted" and argued in Court that since this was prior to the service of formal document demands in this litigation that they did not have a duty to preserve. *See* Matz Decl., Ex. 15 Pp. 56:3-15; Matz Decl. ¶31.  After receiving Plaintiff's Motion for Sanctions, and understanding that arguing document demands triggered their obligation would not work, Defendants tried to change their story and claim that Plaintiff's email account was deleted in March and argued that their duty to preserve did not arise until July of 2017.  Specifically, Defendants claimed that the prior representation had been based on an incorrect assumption that the "03/06/2017" on a deletion log (that was conveniently never provided) was in European date format

meaning June 3, 2017, but that they have now decided that the date was in the U.S. format i.e. March 6, 2017. *See* Kundar Decl. ¶29; van der Bent Decl. ¶9.

Defendants object to any acceptance by the Court of this new claim.  The Defendants' did not support their new claim with a declaration of the person who performed the deletion and would know the date it occurred, instead they used someone who is making a presumption that because June 3, 2017 was a Saturday it could not be that date, although there is no cogent explanation for why it could not have occurred on a Saturday.  Additionally, despite the fact that it clearly exists (*see* Kundar Decl., ¶29; van der Bent Decl. ¶9) Defendants have not provided a copy of the alleged deletion log, which would show whether the log is all in European time format, or less plausibly, all different local time formats as they now claim.  Additionally, Defendants failed to explain why they have surmised that this log would be in US date and time format rather than European format when their IT department is in Europe.  Defendants also offer no explanation as to why this one log would be in US format when other data relating to Plaintiff's user accounts such as the little SAP data that was recovered was in European time format (*see* Matz Reply Decl., Ex. 43) and to the extent they could be recovered, the time of the emails themselves when recovered were in European time format, and had to be converted.  van der Bent Decl. ¶12.  Defendants also proffer no explanation for why Plaintiff's email account was supposedly deleted 38 days after her termination, despite the fact their alleged policy is to delete employee's email account after "two months".  *See* van der Bent Decl. ¶6; R&R Pp. 32.  Based on Judge Wang's recommendation that the Defendants "had a duty to preserve no later than October 2016" (R&R pp. 22) both dates were long after the duty to preserve arose.  However, this later deletion shows further evidence of intent to deprive.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests an order granting default judgement, or an order striking some or all of Defendants' affirmative defenses and/or appropriate preclusion orders, in addition to the adverse inferences that have been recommended.  Plaintiff also requests that the contentions by Defendants, objected to by Plaintiff herein, be rejected.

Dated: New York, New York
      July 3, 2019

Respectfully submitted,

ADELMAN MATZ P.C.

By: _____
    Sarah M. Matz, Esq.
    Gary Adelman, Esq.
1173A Second Avenue, Suite 153
New York, New York 10065
Tel: (646) 650-2207
Email: sarah@adelmanmatz.com
Email: g@adelmanmatz.com
*Attorneys for Plaintiff*