UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHRISTINE HAZEL S. CRUZ,

                              Plaintiff,          Case No. 1:17-cv-07685 (PGG)(OTW)

        - against -

G-STAR INC., G-STAR USA LLC, and G-
STAR RAW C.V.,

                              Defendants.

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S LIMITED
OBJECTIONS TO JUNE 19, 2019 REPORT AND RECOMMENDATION ON
PLAINTIFF'S SPOLIATION MOTION**

FOX HORAN & CAMERINI LLP
885 Third Avenue, 17th Floor
New York, New York 10022
Tel.: (212) 480-4800

*Attorneys for Defendants G-Star Inc.
and G-Star USA LLC*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

RELEVANT FACTUAL BACKGROUND.............................................................. 4

ARGUMENT .......................................................................................................... 7

I.   G-STAR DID NOT ACT WITH THE INTENT TO DEPRIVE PLAINTIFF OF
     EVIDENCE FOR USE IN THIS LITIGATION AND ENGAGED IN GOOD FAITH
     AND CONSTRUCTIVE EFFORTS TO REPLACE AND RESTORE THE EMAILS
     IN THE EMAIL FILE AND PLAINTIFF'S SAP DATA................................. 8

     A.   The Email File and SAP Data Were Deleted Per G-Star's Routine Policies.......... 8

     B.   G-Star Voluntarily Created the Reconstruction, Retrieved and Produced
          Substantial Evidence, and Offered Alternative Sources of Deleted Evidence ....... 9

     C.   G-Star's Imposition of a Litigation Hold in July 2017 was Proper .................... 10

     D.   G-Star Submitted Sworn Declarations that the Email File and Plaintiff's SAP
          Data Were Not Deleted to Deprive Plaintiff of Their Use in Litigation.............. 11

     E.   G-Star's Conduct During This Litigation Does Not Show Intent to Deprive....... 11

     F.   Plaintiff Has Not – and Cannot – Establish Intent to Deprive ............................ 13

II.  PLAINTIFF IS NOT ENTITLED TO RULE 37(e)(2) SANCTIONS ............................ 13

     A.   Plaintiff is Not Entitled to an Adverse Inference Instruction ............................. 14

          1.   The Email File.................................................................................... 14

          2.   Plaintiff's SAP Data........................................................................... 16

          3.   The Cases Cited By Plaintiff Are Inapposite To This Case..................... 17

     B.   Plaintiff is Not Entitled to Default Judgment ........................................ 18

     C.   Plaintiff is Not Entitled to an Order Striking G-Star's Answer or Affirmative
          Defenses .................................................................................................... 20

     D.   Plaintiff is Not Entitled to a Preclusion Order ....................................... 21

III. MAGISTRATE JUDGE WANG PROPERLY CONSIDERED EVIDENCE AS TO
     G-STAR'S PRESERVATION EFFORTS ......................................................... 23

IV.  MAGISTRATE JUDGE WANG PROPERLY CREDITED EVIDENCE THAT THE
     EMAIL FILE WAS DELETED ON MARCH 6, 2017 .................................... 24

CONCLUSION..................................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Brown Jordan Int'l, Inc. v. Carmicle,*
2016 WL 815827 (S.D. Fla. Mar. 2, 2016) ...................................................................17

*CAT3, LLC v. Black Lineage, Inc.,*
164 F. Supp. 3d 488 (S.D.N.Y. 2016) ...................................................................18, 23

*CIGNEX Datamatics, Inc. v. Lam Research Corp.,*
2019 WL 1118099 (D. Del. Mar. 11, 2019) ...............................................................10

*Consol. Aluminum Corp. v. Alcoa, Inc.,*
244 F.R.D. 335 (M.D. La. July 19, 2006) ...............................................................9, 14

*Eshelman v. Puma Biotech., Inc.,*
2017 WL 2483800 (E.D.N.C. June 7, 2017) ...............................................................11

*Flair Airlines, Ltd. v. Gregor, LLC,*
2018 WL 8445779 (N.D. Ill. Dec. 14, 2018) ...........................................................7, 13

*Fuhs v. McLachlan Drilling Co.,*
2018 WL 5312760 (W.D. Pa. Oct. 26, 2018) ...............................................................11

*Global Material Techs., Inc. v. Dazheng Metal Fibre Co. Ltd.,*
2016 WL 4765689 (N.D. Ill. Sept. 13, 2016) ...............................................................19

*Holguin v. AT&T Corp.,*
2018 WL 6843711 (W.D. Tex. Nov. 8, 2018) ...............................................................9

*In re WRT Energy Secs. Litig.,*
246 F.R.D. 185 (S.D.N.Y. 2007) ...............................................................................23

*Jenkins v. Woody,*
2017 WL 362475 (E.D. Va. Jan. 21, 2017) ...............................................................23

*Leidig v. Buzzfeed, Inc.,*
2017 WL 6512353 (S.D.N.Y. Dec. 19, 2017) ...............................................................8

*Lokai Holdings LLC v. Twin Tiger USA LLC,*
2018 WL 1512055 (S.D.N.Y. Mar. 12, 2018) ...........................................................8, 23

*Marfia v. T.C. Ziraat Bankasi, N.Y. Branch,*
100 F.3d 243 (2d Cir. 1996) ...............................................................................18, 19

*Mazzei v. Money Store,*
656 F. App'x 558 (2d Cir. 2016) ...............................................................................14

iii

*Metro. Opera Ass'n, Inc. v. Local 11, Hotel Employees and Rest. Employees Int'l Union*, 212 F.R.D. 178 (S.D.N.Y. 2003) ...........................................................18, 19

*Mfg. Automation and Software Sys., Inc. v. Hughes*,
2018 WL 5914238 (C.D. Cal. Aug. 20, 2018) ................................................19

*Miller v. Time-Warner Commc'ns, Inc.*,
1999 WL 739528 (S.D.N.Y. Sept. 22, 1999) ................................................20

*Monolithic Power Sys., Inc. v. Intersil Corp.*,
2018 WL 6075046 (D. Del. Nov. 19, 2018) ...................................................9

*Neely v. Boeing Co.*,
2019 WL 1777680 (W.D. Wash. Apr. 23, 2019) .............................................19

*Ottoson v. SMBC Leasing & Fin., Inc.*,
268 F. Supp. 3d 570 (S.D.N.Y. 2017) ...........................................................17

*Pearlstein v. BlackBerry Ltd.*,
2019 WL 1259382 (S.D.N.Y. Mar. 19, 2019) ................................................24

*Postle v. SilkRoad Tech., Inc.*,
2019 WL 692944 (D.N.H. Feb. 19, 2019) ...............................................8, 10

*Residential Funding Corp. v. DeGeorge Fin. Corp.*,
306 F.3d 99 (2d Cir. 2002) ...........................................................................17

*Scantibodies Lab., Inc. v. Church & Dwight Co., Inc.*,
2016 WL 11271874 (S.D.N.Y. Nov. 4, 2016) .........................................14, 22

*Shcherbakovskiy v. Da Capo Al Fine, Ltd.*,
490 F.3d 130 (2d Cir. 2007) .........................................................................14

*Skeete v. McKinsey & Co., Inc.*,
1993 WL 256659 (S.D.N.Y. July 7, 1993) ....................................................11

*Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Group*,
328 F.R.D. 100 (S.D.N.Y. 2018) .............................................................20, 21

*Taylor v. City of N.Y.*,
293 F.R.D. 601 (S.D.N.Y. 2013) ..................................................................23

*TLS Mgmt. & Mktg. Servs., LLC v. Mardis Fin. Servs., Inc.*,
2018 WL 3673090 (S.D. Miss. Jan. 29, 2018) ..............................................19

*Watkins v. N.Y.C. Tr. Auth.*,
2018 WL 895624 (S.D.N.Y. Feb. 13, 2018) ....................................................2

**Other**

Fed. R. Civ. P. 37.................................................................................................................8

Fed. R. Civ. P. 37 advisory committee note to 2015 amendment..........................................14, 22

## PRELIMINARY STATEMENT

Defendants G-Star Inc. and G-Star USA LLC (collectively, "G-Star")[1] submit this response in opposition to Plaintiff Christine Hazel S. Cruz's ("Plaintiff") limited objections to Magistrate Judge Ona T. Wang's June 19, 2019 Report & Recommendation on Plaintiff's motion for spoliation sanctions (the "RR"). ECF No. 89. Plaintiff sought spoliation sanctions because the global Information and Communications Technologies Team ("ICT") in Amsterdam – following its routine policies – deleted: (1) Plaintiff's Outlook email file, in PST format, on March 6, 2017 (the "Email File"); and (2) Plaintiff's data from the SAP order-entry system, in December 2017. The RR erroneously concludes, among other things, that the deleted material could not be restored or replaced and that G-Star acted with the intent to deprive Plaintiff of this evidence, and recommends that an adverse inference instruction be given at the trial of this action. *See id.*[2]

Contra the RR, and contra Plaintiff, the threshold requirements for awarding spoliation sanctions under Rule 37(e) have not been met here. The RR's finding that G-Star's duty to preserve evidence arose in October 2016, after Plaintiff submitted her "First Complaint" to HR on September 24, 2016, is incorrect. There was no basis to conclude that litigation was likely at that time. Plaintiff never threatened to sue G-Star. No lawyer ever contacted G-Star on Plaintiff's behalf, or was even identified by Plaintiff. Moreover, the "First Complaint" did not contain any complaints about any conduct prohibited by the NYSHRL or the NYCHRL. (*See* ECF No. 91,

---

1. Defendant G-Star Raw C.V. was never served in this action. Decl. of Kathleen M. Kundar, Esq., filed in opposition to Plaintiff's spoliation motion, ECF No. 50 ("Kundar Decl."), ¶ 1.

2. On July 3, 2019, G-Star filed objections to the RR and to the accompanying Order awarding Plaintiff attorneys' fees and costs pursuant to Fed. R. Civ. P. 37(e)(1) (the "Order"). ECF Nos. 91-93. G-Star's objections are currently pending before this Court. G-Star incorporates by reference herein its objections to the RR and to the Order. *See id.* G-Star also incorporates by reference herein its papers in opposition to Plaintiff's spoliation motion. *See* ECF Nos. 50-54.

pp.5-6 for full quote of "First Complaint"). Nor did it contain any request for overtime or other pay. Plaintiff – an exempt employee – complained about her workload. Plaintiff's complaint was resolved by reducing her job duties – without changing her job title or salary – in October 2016.

G-Star's voluntary reconstruction of the Email File (the "Reconstruction"), preservation of other employees' complete email files, and production of recovered SAP data also show that the evidence could be restored or replaced. As Plaintiff acknowledges, G-Star produced emails from other employees' email files during discovery. *See, e.g.*, Pl. Br., pp.9-10.[3] Thus, Plaintiff *admits* that her emails can be obtained from other sources. G-Star offered Plaintiff the opportunity to search for her emails in other employees' email files. Her counsel rejected such discovery. Her counsel also rejected G-Star's proposal to word search those email files by identifying all emails exchanged between each employee and Plaintiff and applying targeted search terms to locate relevant evidence. Plaintiff's express rejection of obtaining her emails from other custodians – or proving that the evidence could not be restored or replaced – forecloses the availability of Rule 37(e) sanctions. *See Watkins v. N.Y.C. Tr. Auth.*, 2018 WL 895624, at *10 (S.D.N.Y. Feb. 13, 2018) (movant "could have questioned and/or requested production from its own employees or sought to subpoena [ESI]," but did not, thus failing to show ESI could not be restored or replaced).

The RR did not (and could not) cite any *direct* evidence to support its conclusion that G-Star acted with the intent to deprive Plaintiff of evidence for use in this litigation. Instead, the RR's

---

3.   G-Star denies any allegation that it "cherry-picked" favorable evidence for production. As any responsible party to litigation would, G-Star conducted reasonable searches of its files and produced documents responsive to Plaintiff's document demands. Indeed, in connection with her spoliation motion, Plaintiff cited documents produced by G-Star which she contends *support her claims*. *See* Decl. of Sarah M. Matz, Esq., filed in support of Plaintiff's spoliation motion, ECF No. 45 ("Matz Decl."), Exs. 3, 5-7, 11-14, 17, 29. If Plaintiff had taken G-Star up on its offer to word search other employees' email files, Plaintiff would have been able to access and retrieve additional emails from the Email File – most likely thousands of them.

2

finding is based on unsupported speculation and suspicion drawn from a timeline that erroneously begins in October 2016 – before the duty to preserve was triggered. The RR also erroneously concluded that G-Star acted in "bad faith" based on a finding that counsel did not disclose the deletions for a "period of over a year." RR, p.31. Yet, the RR *itself* shows that counsel did not learn of the deletions until late March and April 2018 and disclosed them in July 2018 – only 4 months later – after undertaking efforts to restore or replace the evidence. *See id.* at pp.14, 16. G-Star has also presented sworn declarations that the Email File and Plaintiff's SAP data were deleted in accordance with G-Star's routine policies – not to deprive Plaintiff of their use in litigation. Consequently, Plaintiff has not (and cannot) establish that G-Star acted with the intent to deprive her of evidence for use in this litigation and is not entitled to Rule 37(e)(2) sanctions.

Despite the serious weaknesses in Plaintiff's showing, the RR imposed the severe sanction of an adverse inference instruction. Plaintiff, hoping to sidestep these weaknesses, has now gone on the offensive by seeking even harsher sanctions. Apparently concerned that this Court will consider evidence supporting G-Star's good faith preservation efforts, replacement offers, and disclosures, Plaintiff also objects to the RR's consideration of the Kundar Decl. Finally, although G-Star filed a sworn declaration attesting that the Email File was deleted on March 6, 2017, Plaintiff – without any proof to the contrary – objects to crediting this evidence.[4] For the reasons that follow, this Court should reject Plaintiff's objections, deny the dispositive sanctions Plaintiff seeks, and decline to enter any other sanctions against G-Star. The requirements of Rule 37(e) have not been met, as shown above, below, and in G-Star's objections to the RR. *See* ECF No. 91.

---

4. In part, Plaintiff takes issue with the fact that the deletion log was not produced for her review. Herewith, G-Star submits an authenticated copy of the deletion log. Decl. of Rob van der Bent, dated August 6, 2019 ("2d van der Bent Decl."), Ex. 2. The deletion log was identified in the Decl. of Rob van der Bent, dated November 1, 2018, filed in opposition to Plaintiff's motion for spoliation sanctions, ECF No. 51 ("van der Bent Decl.").

## RELEVANT FACTUAL BACKGROUND

G-Star refers this Court to the "Relevant Factual Background" set forth in G-Star's

objections to the RR. ECF No. 91, pp.4-12. For this Court's convenience, G-Star includes the

following timeline of events relevant to Plaintiff's spoliation motion:

| Date | Event |
|------|-------|
| **2016** | |
| August 15, 2016 | Plaintiff fails to ensure an order worth $250,000 (the "Order") is entered into G-Star's order-entry system. Matz Decl., Ex. 12 at G-Star 0597-605. |
| September 19, 2016 | G-Star discovers Plaintiff's failure to ensure that the Order was timely entered and Plaintiff's supervisor, Ms. Kendra Palmer ("Palmer"), considers terminating Plaintiff's employment.[5] |
| September 20 and 23, 2016 | A former franchise owner shows Plaintiff text messages that Palmer wants to terminate Plaintiff's employment. Matz Decl., Ex. 1 at ¶¶ 80, 81. |
| September 24, 2016 | Plaintiff submits her "First Complaint" to Willemien Storm ("Storm"), Chief HR Officer in Amsterdam, to complain of overwork and a purported "conspiracy" to terminate her employment. Matz Decl., Ex. 8. |
| Late September 2016 | Storm contacts G-Star's usual United States employment law advisor, Kathleen M. Kundar, Esq., to discuss the "First Complaint." *See* Matz Decl., Ex. 7. |
| October 5, 2016 | Storm speaks with Plaintiff regarding the "First Complaint." Storm asks Plaintiff if there is "anything else" that she wants to discuss, but Plaintiff continues to complain about her workload and says that she saw text messages indicating that Palmer wanted to fire her. Matz Decl., Ex. 11. |
| October 11, 2016 | Palmer circulates an email containing examples of Plaintiff's poor job performance since December 2015, which she had begun preparing after discovering Plaintiff's failure to ensure that the Order was timely entered. *See* Matz Decl., Ex. 12; 2d Matz Decl., Ex. 44. |
| October 13, 2016 | Plaintiff meets with Storm, Palmer, and Juan Garcia to discuss the "First Complaint." Plaintiff's complaint of overwork is addressed by reducing her workload, with no changes to her job title or salary. Kundar Decl., ¶ |

---

5.  *See id.*; *see also* Decl. of Sarah M. Matz, Esq., dated November 9, 2018, filed in further support of Plaintiff's spoliation motion, ECF No. 58 ("2d Matz Decl."), Ex. 44.

| | |
|---|---|
| | 40(D). |
| December 19, 2016 | Palmer completes performance reviews for Plaintiff's team because the reviews were due that day and Plaintiff was out of the office on a personal day. *See* Matz Decl., Ex. 13. |
| **2017** | |
| January 6, 2017 | Plaintiff, having made no earlier inquiries, first inquires about the performance reviews. *See id.* Upon being told that Palmer completed the reviews, Plaintiff is rude and insubordinate toward Palmer – who by then was co-manager of the entire company. |
| January 9, 2017 | Plaintiff submits a "Second Complaint" to Storm based on Palmer's completion of the performance reviews. *See id.* |
| January 27, 2017 | G-Star terminates Plaintiff's employment. G-Star issues Plaintiff a Termination Memo and a standard proposed release, which is routinely offered to employees upon their termination. Matz Decl., Ex. 14. |
| March 6, 2017 | The Email File is deleted by ICT in Amsterdam, pursuant to G-Star's routine policy of deleting email files "about two months" after an employee's employment with G-Star ends. van der Bent Decl., ¶ 6. |
| March 31, 2017 | Palmer is informed by a former manager of G-Star that a former franchise partner told him that Plaintiff was going to sue. Kundar Decl., Ex. D. |
| April 1 or 2, 2017 | Plaintiff's counsel, Gary Adelman, Esq., leaves a voicemail for G-Star and Ms. Kundar is asked to call him back. *Id.* ¶¶ 12, 13. |
| April 3, 2017 | Ms. Kundar speaks with Mr. Adelman on the phone. Mr. Adelman states that he was "retained to look into" hostile work environment, sexual harassment, and FLSA violations. Mr. Adelman says that he will prepare a write-up of Plaintiff's claims and get back to Ms. Kundar. *Id.* ¶ 13. |
| April 3, 2017 – July 20, 2017 | Ms. Kundar has no contact with Mr. Adelman or anyone else purporting to represent Plaintiff. *Id.* ¶ 14. |
| July 20, 2017 | Adelman Matz P.C. sends a demand letter to G-Star. *Id.*, Ex. H. |
| Late July 2017 | Ms. Kundar speaks with G-Star's in-house counsel about the need to preserve evidence. *Id.* ¶ 15. |
| Late July 2017 | G-Star's in-house counsel imposes a litigation hold upon various employees' email accounts, including Plaintiff's. van der Bent Decl., ¶ 7. |

| July 25, 2017 | Ms. Kundar emails G-Star's HR Department an initial list of documents to assemble. *Id.* ¶ 15. |
|---|---|
| September 1, 2017 | Plaintiff commences this action. Matz Decl., Ex. 1. |
| October 2, 2017 | Ms. Kundar emails G-Star's in-house counsel and HR Department an additional list of documents to compile and notes that "[w]e eventually will have to p[roduce] many emails from the years of Hazel's edmployment [sic]. I will work on a list of reasonable search terms." Kundar Decl., ¶ 18. |
| October 12, 2017 | G-Star files its Verified Answer to Plaintiff's Verified Complaint, asserting, among many other affirmative defenses, that Plaintiff was an exempt employee not entitled to overtime pay. Matz Decl., Ex. 37. |
| December 2017 | Plaintiff's SAP data is deleted by ICT in Amsterdam, during a routine clean-up of accounts. Although a litigation hold had been imposed, there was a "glitch" in the hold process caused by the earlier deletion of the Email File. As a result, the ICT employees who deleted Plaintiff's SAP data were not aware of the litigation hold.[6] |
| **2018** | |
| March 8-9, 2018 | Plaintiff serves her first set of document demands, and Ms. Kundar forwards the demands to G-Star. Matz Decl., Ex. 18; Kundar Decl., ¶ 23. |
| Late March 2018 | In-house counsel alerts Ms. Kundar that he has just learned that the Email File was deleted. Kundar Decl., ¶ 24. |
| April 9, 2018 | G-Star completes the Reconstruction. van der Bent Decl., ¶¶ 11, 13. |
| April 2018 | Ms. Kundar is informed that Plaintiff's SAP data was deleted. Kundar Decl., ¶ 26. |
| April – July 2018 | Ms. Kundar and G-Star produce documents responsive to Plaintiff's document demands, identify alternate sources of the evidence in the Email File and SAP data, evaluate whether the deleted evidence could be restored or replaced, and retain an e-discovery consultant to assist with review of other employees' email files. *See, e.g., id.* ¶¶ 27, 33. |
| May – July 2018 | Counsel participate in meet-and-confer calls to address their disputes as to Plaintiff's and G-Star's discovery responses. *See id.* ¶¶ 28, 34. |

---

6. Decl. of Klaas Buist, filed in opposition to Plaintiff's motion for spoliation sanctions, ECF No. 52. ("Buist Decl"), ¶ 7.

| | |
|---|---|
| May 3, 2018 | Counsel appear for a status conference before Judge Gardephe. *See* ECF No. 16. Plaintiff and G-Star express interest in settlement. This action is referred to Magistrate Judge Wang for this purpose. *See* ECF No. 20. |
| May 23 or 24, 2018 | G-Star's in-house counsel erroneously informs Ms. Kundar that the Email File was deleted on June 3, 2017. Kundar Decl., ¶ 29. |
| June 27, 2018 | The parties take part in an all-day private mediation, but are unable to settle this action. *Id.* ¶ 31. |
| July 26, 2018 | Ms. Kundar voluntarily discloses the deletions of the Email File and Plaintiff's SAP data to Plaintiff's counsel. *Id.* ¶ 34. |
| August 2, 2018 | Counsel appear before Magistrate Judge Wang for a conference. Plaintiff is given permission to file her motion for spoliation sanctions. Plaintiff chooses to take a copy of the Reconstruction and rejects taking discovery of other employees' email files, as was offered by G-Star. *Id.*, Ex. K at p.8. |
| August 9, 2018 | G-Star produces the Reconstruction to Plaintiff. *Id.* ¶ 36. |
| October 1, 2018 | Briefing begins on Plaintiff's motion for spoliation sanctions. |
| Late October 2018 | G-Star finds a creative, outside-the-box approach to recover much of Plaintiff's SAP data and promptly produces it to Plaintiff – before her spoliation motion is fully submitted. Buist Decl., ¶ 10; Kundar Decl., ¶ 37.<br><br>G-Star also discovers that the Email File was deleted on March 6, 2017 – not June 3, 2017, as was previously reported due to a mix-up in European-style vs. United States-style date formats. van der Bent Decl., ¶ 9. |

## **ARGUMENT**

## **PLAINTIFF'S ATTEMPT TO SIDESTEP THE FATAL WEAKNESSES IN THE RR BY SEEKING EVEN HARSHER SPOLIATION SANCTIONS FAILS**

Fed. R. Civ. P. 37(e), amended as of December 1, 2015, governs Plaintiff's spoliation motion. "Amended Rule 37(e), relative to its predecessor, significantly limits a court's discretion to impose sanctions for the loss or destruction of ESI." *Flair Airlines, Ltd. v. Gregor, LLC*, 2018 WL 8445779, at *3 (N.D. Ill. Dec. 14, 2018). As summarized at pp.1-2 above and in G-Star's objections to the RR (ECF No. 91), the threshold requirements for awarding Rule 37(e) sanctions

are not met here. G-Star's duty to preserve ESI was not triggered in October 2016 because litigation was not likely at that time. Also, Plaintiff's emails and SAP data could be restored or replaced, including through discovery of other G-Star employees' email files. Significantly, Plaintiff *expressly rejected* such replacement discovery when it was offered to her by G-Star.

*Even if* she could establish Rule 37(e)'s threshold requirements (she cannot), Plaintiff cannot show that G-Star acted with the intent to deprive her of evidence for use in this litigation. Such a showing is *required* before this Court can impose the harsh spoliation sanctions sought by Plaintiff pursuant to Rule 37(e)(2). *See* Fed. R. Civ. P. 37(e)(2). Indeed, "given the severity of the sanctions available under Rule 37(e)(2)," courts have held that "the requisite intent finding should be based on clear and convincing evidence[.]" *Lokai Holdings LLC v. Twin Tiger USA LLC*, 2018 WL 1512055, at *1 (S.D.N.Y. Mar. 12, 2018) (circumstantial evidence "suggestive of an intent to deprive" was "not sufficiently compelling to justify the necessary finding").

I.     **G-STAR DID NOT ACT WITH THE INTENT TO DEPRIVE PLAINTIFF OF EVIDENCE FOR USE IN THIS LITIGATION AND ENGAGED IN GOOD FAITH AND CONSTRUCTIVE EFFORTS TO REPLACE AND RESTORE THE EMAILS IN THE EMAIL FILE AND PLAINTIFF'S SAP DATA**

No Rule 37(e)(2) sanctions are available unless Plaintiff proves that G-Star acted with intent to deprive. *Postle v. SilkRoad Tech., Inc.*, 2019 WL 692944, at *6 (D.N.H. Feb. 19, 2019) (intent to deprive is "stringent" requirement that must be established by movant). "[T]he intent contemplated by Rule 37 is not merely the intent to perform an act that destroys ESI but rather the intent to actually deprive another party of evidence." *Leidig v. Buzzfeed, Inc.*, 2017 WL 6512353, at *11 (S.D.N.Y. Dec. 19, 2017). Plaintiff has not – and cannot – make this showing.

A.     **The Email File and SAP Data Were Deleted Per G-Star's Routine Policies**

ICT in Amsterdam deleted the Email File on March 6, 2017 – in the second calendar month after Plaintiff's termination on January 27, 2017 – pursuant to G-Star's routine policy of deleting

employees' email files "about two months" after their employment ends. van der Bent Decl., ¶ 6. Likewise, ICT in Amsterdam deleted Plaintiff's SAP data in December 2017 during a "periodic clean-up of SAP accounts." Buist Decl., ¶ 7.[7] As the Email File and SAP data were deleted per G-Star's routine policies, there can be no finding of intent to deprive. *See*, *e.g.*, *Monolithic Power Sys., Inc. v. Intersil Corp.*, 2018 WL 6075046, at *2 (D. Del. Nov. 19, 2018) (where ESI was deleted days before suit was filed, no spoliation because "no evidence that the [ESI] w[as] deleted for any reason other than in the ordinary course"); *Holguin v. AT&T Corp.*, 2018 WL 6843711, at *9 (W.D. Tex. Nov. 8, 2018) (no intent to deprive where ESI was deleted after duty to preserve arose; "[e]vidence of destruction as part of a regular course of conduct is insufficient to support a finding of intent to deprive, as required by Rule 37(e)(2), because it does not demonstrate bad faith"); *Consol. Aluminum Corp. v. Alcoa, Inc.*, 244 F.R.D. 335, 344 (M.D. La. July 19, 2006) (culpable state of mind "not present where the destruction is a matter of routine … even though the contents of the communications might, at a later date, have some relevance to a lawsuit").

### B. G-Star Voluntarily Created the Reconstruction, Retrieved and Produced Substantial Evidence, and Offered Alternative Sources of Deleted Evidence

In April 2018, G-Star created the Reconstruction – on its own initiative, and at its considerable time and expense. van der Bent Decl. ¶¶ 11, 13. The emails in the Reconstruction reflect: "who was the sender, receiver and copy readers"; "the date and time the messages were sent"; and at least "a few lines of text" in the body of the message. *Id.* ¶ 11.[8] This information is not only useful on its own; it also provides a road map for locating Plaintiff's emails in other

---

7. Although a litigation hold was in place, the "people performing the deletion of SAP, were not informed of any hold" due to a "glitch" caused by the prior deletion of the Email File. *Id.*

8. Moreover, there are thousands of pages of complete emails included in the Reconstruction. *See* Decl. of Jami L. Mevorah, filed in support of G-Star's objections to the RR, ECF No. 92 ("Mevorah Decl."), Ex. B.

9

custodians' email files. Indeed, G-Star preserved other employees' email files and invited Plaintiff to search them using search terms. Perhaps fearful of what this evidence would show, Plaintiff's counsel, in open court, rejected such discovery in favor of the Reconstruction – even knowing it was incomplete. Kundar Decl., Ex. K at p.8 ("COURT: My understanding is from reading the materials is that plaintiffs are now just saying forget the search terms, you don't have to incur that cost, just turn over the PST file? … MR. ADELMAN: Yes. MS. MATZ: For the most part, yes.").

G-Star separately produced thousands of pages of complete emails from the Email File, which had been retrieved from other sources. *See*, *e.g.*, Kundar Decl., Ex. M. In addition, using an outside-the-box technical approach, G-Star was able to recover much of Plaintiff's SAP data. Buist Decl., ¶ 10; *see also* p.16 *below*. G-Star promptly produced the recovered SAP data to Plaintiff before her spoliation motion was fully briefed. Kundar Decl., ¶ 37.

That G-Star took affirmative steps *on its own volition* – including before Plaintiff even raised the possibility of seeking spoliation sanctions – to recover the deleted evidence and to offer alternative sources of that evidence contradicts any finding of intent to deprive. *See*, *e.g.*, *Postle*, 2019 WL 692944, at *7 (alleged spoliator's "suggest[ions of] several ultimately unsuccessful means by which [movant] might bypass the encryption and offer[s] to assist [movant] by searching for the recovery key" were "inconsistent with an intention to permanently deprive [movant] of the information"); *see also CIGNEX Datamatics, Inc. v. Lam Research Corp.*, 2019 WL 1118099, at *5 n.10 (D. Del. Mar. 11, 2019) (movant "never attempted to obtain any of the lost emails from" other sources, suggesting "any prejudice from the loss is not as significant as [movant] claims").

## C.   G-Star's Imposition of a Litigation Hold in July 2017 was Proper

From the time Plaintiff's counsel first spoke with G-Star's counsel in early April 2017 until Plaintiff's counsel sent a letter which identified some specifics of the claims Plaintiff intended to assert against G-Star on July 20, 2017, G-Star did not delete any evidence. G-Star's counsel

properly imposed a litigation hold in July 2017, upon receipt of the letter. Under these circumstances, imposition of a litigation hold in July 2017 does not show intent to deprive. *See*, *e.g.*, *Eshelman v. Puma Biotech., Inc.*, 2017 WL 2483800, at *5 (E.D.N.C. June 7, 2017) (no intent to deprive where defendant imposed litigation hold which did not include browser history, and browser history had already been deleted when its preservation was requested by movant).

###### D.    G-Star Submitted Sworn Declarations that the Email File and Plaintiff's SAP Data Were Not Deleted to Deprive Plaintiff of Their Use in Litigation

G-Star submitted sworn declarations by the ICT employees in Amsterdam who oversee G-Star employees' email files and SAP data that this evidence was not deleted to deprive Plaintiff or anyone of its use in litigation. van der Bent Decl. ¶ 16 ("I have no reason to believe that anyone intentionally or willfully deleted the Email account of Hazel Cruz in order to deprive her or anyone of the information's use in litigation."); Buist Decl., ¶ 12 ("I have no reason to believe that anyone intentionally and willfully deleted the SAP data for Hazel Cruz in order to deprive her or anyone of the information's use in litigation."). Plaintiff has not presented any evidence to the contrary. *See*, *e.g.*, *Fuhs v. McLachlan Drilling Co.*, 2018 WL 5312760, at *14 (W.D. Pa. Oct. 26, 2018) (no intent to deprive where plaintiffs "denied intentionally deleting any ESI and Defendants have simply not proven that the Court should discredit their sworn denials," instead asking "the Court to draw speculative inferences about the Plaintiffs' subjective intent"); *Skeete v. McKinsey & Co., Inc.*, 1993 WL 256659, at *5-6 (S.D.N.Y. July 7, 1993) (crediting alleged spoliator's sworn affidavit that loss or destruction of evidence was unintentional).

###### E.    G-Star's Conduct During This Litigation Does Not Show Intent to Deprive

Throughout this litigation, G-star and its counsel have acted in good faith and without any intent to deprive Plaintiff of evidence. Plaintiff's arguments to the contrary are laced with exaggeration and overstatement, and cannot convert G-Star's sound efforts over 4 months to

identify and retrieve replacement discovery into something wrongful. These types of constructive efforts are exactly what the courts expect a party to do upon discovering that it deleted evidence.

Plaintiff's first document demands were served on March 8, 2018 – a year *after* the Email File was deleted. While working with G-Star to prepare its responses, in late March 2018, counsel was made aware of the deletions of the Email File. Kundar Decl., ¶ 24. Then, in April 2018, counsel was made aware of the deletions of Plaintiff's SAP data. *Id.* ¶ 26. Ms. Kundar did not immediately disclose the deletions because she was working with in-house counsel to identify other sources of the evidence and determining whether the evidence could be restored. *Id.* ¶ 27. Ms. Kundar was also working with an e-discovery consultant to assist with reviewing other employees' email files so that complete versions of Plaintiff's emails could be located and produced. *Id.* Indeed, in July 2018, G-Star proposed search terms in good faith to facilitate discovery of those files. *See* Matz Decl., Ex. 9; Kundar Decl., ¶ 33. Plaintiff did not respond to G-Star's proposal and then rejected such discovery. Kundar Decl., ¶ 36. At all times, Ms. Kundar was working to find a solution to restore or replace the evidence – not to mislead Plaintiff's counsel or the Court.

Ultimately, on July 26, 2018 – 4 months after being told of the deletions – Ms. Kundar *voluntarily* disclosed them to Plaintiff's counsel. *Id.* ¶ 34. At the August 2, 2018 hearing before Magistrate Judge Wang, Ms. Kundar provided the information as to the deletions that was then available to her. Kundar Decl., ¶¶ 29, 36; van der Bent Decl., ¶ 9.

Moreover, G-Star's objections to Plaintiff's document demands (*e.g.*, as to the breadth of the demands) were proper and did not improperly suggest the existence of the complete Email File. There is also no evidence that Plaintiff was prejudiced by having meet-and-confer calls to discuss G-Star's objections; those calls included discussion of Plaintiff's objections as well as G-Star's

objections.[9] It was also during the parties' meet-and-confer calls that Ms. Kundar voluntarily disclosed the deletions of the Email File and Plaintiff's SAP data. Kundar Decl., ¶ 34.

### F.   Plaintiff Has Not – and Cannot – Establish Intent to Deprive

At all times, G-Star and counsel worked in good faith to resolve the deletions. Yet, Plaintiff twists their reasonable and constructive restoration and production efforts into deception. Plaintiff has presented no evidence of intent to deprive – and, in fact, there is strong evidence that G-Star *did not* act with intent to deprive. Plaintiff's efforts to spin G-Star's good faith actions as nefarious – on the basis of flimsy speculation alone – are simply not enough to meet the "stringent" requirement of finding an intent to deprive. *See Flair Airlines*, 2018 WL 8445779, at *4 (emphasizing that "throwing up any possible suggestion to see what sticks" is "not an appropriate means of obtaining sanctions for spoliation of evidence" and refusing to rely on "pure speculation" to find intent to deprive movant of evidence for use in litigation).

## II.   PLAINTIFF IS NOT ENTITLED TO RULE 37(e)(2) SANCTIONS

Plaintiff cannot establish the threshold requirements for an award of Rule 37(e) sanctions. *See* pp.1-2 *above*; *see also* ECF No. 91, pp.13-20. Additionally, G-Star did not act with the intent to deprive Plaintiff of evidence for use in this litigation. *See* pp.8-13 *above*. As such, Plaintiff is not entitled to *any* sanctions pursuant to Rule 37(e)(2). However, should this Court consider Plaintiff's requests for the harshest sanctions available under Rule 37(e)(2), this Court

> should exercise caution … in using the measures specified in (e)(2). Finding an intent to deprive another party of the lost information's use in the litigation does not require a court to adopt any of the measures listed in subdivision (e)(2). The remedy should fit the wrong, and the severe measures authorized by this

---

9.   In the course of the parties' meet-and-confer calls, Plaintiff also suspiciously enlarged her request for a *table-style printout* of the emails in the Email File to production of *the entirety* of the Email File. Surely this Court would not have found each and every email Plaintiff sent, received, or drafted over more than *4 years* of employment to be relevant to her claims in this action and ordered such voluminous production to Plaintiff.

> subdivision should not be used when the information lost was relatively unimportant or lesser measures such as those specified in subdivision (e)(1) would be sufficient to redress the loss.

Fed. R. Civ. P. 37 advisory committee note to 2015 amendment (Rule 37(e)(2) sanctions are "very severe"). "'Rule 37 permits the imposition of 'just' sanctions,' and thus 'the severity of [the] sanction must be commensurate with the non-compliance.'" *Scantibodies Lab., Inc. v. Church & Dwight Co., Inc.*, 2016 WL 11271874, at *18 (S.D.N.Y. Nov. 4, 2016) (quoting *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 140 (2d Cir. 2007)) (alteration in original).

### A.   Plaintiff is Not Entitled to an Adverse Inference Instruction

Plaintiff contends that the RR's recommendation that an adverse inference instruction be given is insufficient and seeks harsh spoliation sanctions *in addition*. Courts are (rightfully) hesitant to award adverse inference instructions, reserving this severe sanction for cases where the facts are extreme. *See*, *e.g.*, *Mazzei v. Money Store*, 656 F. App'x 558 (2d Cir. 2016) (affirming denial of adverse inference instruction where movant "failed to diligently seek discovery of … evidence from other obvious sources"); *Consol. Aluminum*, 244 F.R.D. at 345-46 (denying adverse inference instruction where defendants' litigation hold was "not so unreasonable as to demonstrate bad faith," there was not "sufficient evidence that [defendant] acted in bad faith in failing to preserve such electronic evidence earlier," and plaintiff was not significantly prejudiced because it could obtain evidence from preserved email files of other "key players").

Without any supporting evidence, Plaintiff asserts that additional sanctions should be entered because "nearly all" of the Email File and SAP data were lost and cannot be fully retrieved.

### 1.   The Email File

G-Star created (on its own initiative) and produced the Reconstruction – which contains much of the information from Plaintiff's emails, including:

- At least "a few lines of the text" in the body of the email;

- "[T]he sender, receiver and copy readers"; and
- "[T]he date and time the messages were sent."

van der Bent Decl. ¶ 11. Plaintiff argues that "at least … 200 emails" are "virtually blank" and do not contain all of this information. Pl. Br., p.16. However, Plaintiff is attempting to make hay of approximately 200 pages of emails out of 129,297 pages of emails in the Reconstruction – or 0.0015%. Moreover, it is completely unclear where the "virtually blank" emails annexed to the Matz Decl. come from; they are not the Bates labeled images of the emails in the Reconstruction, as produced to Plaintiff by G-Star on August 9, 2018. *See* Matz Decl., Ex. 34; Mevorah Decl., Exs. A, B. In any case, these emails contain no recipient, no subject, and no text. *See* Matz Decl., Ex. 34. Plaintiff has presented no evidence – expert or otherwise – that this is because portions of the emails were deleted and not, for example, because these emails are discarded drafts. It is also well to note that there are numerous duplicates contained in Matz Decl., Ex. 34. Just by way of example, there are *18 copies* of an email dated April 29, 2013 at 12:22 p.m., *19 copies* of an email dated April 29, 2013 at 12:23 p.m., and *19 copies* of an email dated April 29, 2013 at 12:24 p.m. *See id.*

Additionally, Plaintiff contends that "[a]t least a full month of emails from Plaintiff's last month of work" is missing from the Reconstruction. Pl. Br., p.16. Those emails could have been searched for and obtained from other employees' email files – which G-Star expressly offered to Plaintiff – and from third-parties' email files. Indeed, the Reconstruction contains substantial information that could have been used to identify, trace, and obtain evidence from other custodians. Instead, Plaintiff rejected such discovery in favor of seeking case-terminating sanctions. If Plaintiff's emails were so critical to Plaintiff's case, it is astonishing that she took no steps to obtain them from other sources. Moreover, *Plaintiff herself* produced emails from January 2017.

To the extent that Plaintiff claims that an "unknown number of emails" were "permanently destroyed," *id.*, this is pure speculation with no evidentiary basis. Plaintiff's unsupported

15

conjecture does not support entry of the severest sanctions available under Rule 37(e)(2).

### 2. Plaintiff's SAP Data

Plaintiff sought her SAP data to establish her working hours during her employment with G-Star. G-Star restored and produced much of Plaintiff's SAP data – including all order entries made by Plaintiff from 2014-2017. Buist Decl., ¶ 10. There is no data from 2012[10] or 2013 because Plaintiff likely did not enter orders during those times and directed her subordinate to do so. Buist Decl., ¶ 11. As to SAP data concerning Plaintiff's log-ins and pulling of reports, G-Star submitted a sworn declaration that it could not restore such data without disrupting all of its systems. *Id.* ¶ 9. It is simply not proportional to the needs of this case to require G-Star, a multi-national retail company operating in more than 20 countries, to disrupt its global operations to provide this evidence to Plaintiff – particularly given that it only applies to her alleged overtime claims and G-Star has already produced thousands of pages of evidence as to her working hours, including all of the time-stamped emails in the Reconstruction. Kundar Decl., ¶ 39.[11] Plaintiff's vague assertion that she used SAP "frequently" is too ambiguous to conclude that this evidence is sufficiently critical to require such disruptive restoration efforts. Pl. Decl., ECF No. 44, ¶ 5.[12]

---

10. Plaintiff was not even employed by G-Star until November 1, 2012. Kundar Decl., ¶ 40(B).

11. Before Plaintiff learned that the Email File and her SAP data were deleted, Plaintiff estimated her alleged unpaid overtime wages (without liquidated damages) for 2012 to be $144.24 and for 2013 to be $1,700.83, based on her "good faith recollection." Kundar Decl., Exs. E, F. These low amounts make clear that the disruptive efforts which would be required to recover Plaintiff's remaining SAP data are way out of proportion to the needs of this case.

12. The only specific order relevant to this case is the $250,000 Order, which was *not* entered in August 2016. *See* Matz Decl., Ex. 12 at G-Star 0597-605. Plaintiff did not dispute that the Order was not timely entered. *See id.* Just 5 days after it was discovered that Plaintiff had failed to ensure that the Order was timely entered, Plaintiff submitted her "First Complaint" of overwork and a "conspiracy" to fire her to HR. *See* Matz Decl., Ex. 8.

### 3.   The Cases Cited By Plaintiff Are Inapposite To This Case

Based on these facts, Plaintiff is not entitled to an adverse inference instruction – much less an adverse inference instruction coupled with additional sanctions. Indeed, the facts of this case are easily distinguishable from the extreme cases cited by Plaintiff to support that an adverse inference instruction is warranted. *Compare* pp.1-16 *above*[13] *with* cases cited by Plaintiff, including *Ottoson v. SMBC Leasing & Fin., Inc.*, 268 F. Supp. 3d 570 (S.D.N.Y. 2017) (plaintiff purposefully deleted, failed to preserve, and concealed "highly relevant and undeniably responsive emails … throughout th[e] litigation and during discovery disputes," including emails "indicat[ing] efforts by Plaintiff to direct the exact contents of [a] witness statement"); *Brown Jordan Int'l, Inc. v. Carmicle*, 2016 WL 815827 (S.D. Fla. Mar. 2, 2016) (defendant remotely locked plaintiff-issued laptop the day after plaintiff's counsel requested preservation of evidence and refused to provide password even at trial, "remotely wiped the Company-owned iPad and restored it to factory settings," gave unbelievable excuse that his 8-year-old son lost his personal iPad after suit was filed, and gave implausible explanations for accessing 2.4 million files on his personal laptop in 48 hours prior to surrendering it for forensic examination, which altered relevant metadata).[14]

Likewise, the cases cited by Plaintiff to show that an adverse inference instruction would be insufficient on its own do not support the imposition of additional Rule 37(e)(2) sanctions here.

---

13. *See also* ECF No. 53, pp.9-15, 19-21 and 23, and ECF No. 91, pp.13-20 and 22-25.

14. Plaintiff correctly notes that the 2015 amendments to Rule 37(e) superseded the holding in *Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99 (2d Cir. 2002), that an adverse inference instruction could be imposed based on a finding of negligence. Pl. Br., p.17 n.10. G-Star does not agree with Plaintiff that the case is "still useful with regards to crafting of an appropriate remedy." *Id.* The Second Circuit remanded the case so that the movant could file a renewed motion for spoliation sanctions and the district court could apply the now-superseded legal standard. *Residential Funding*, 306 F.3d at 112-13.

*Compare* pp.1-16 *above*[15] *with* cases cited by Plaintiff, including *Metro. Opera Ass'n, Inc. v. Local 100, Hotel Employees & Rest. Employees Int'l Union*, 212 F.R.D. 178 (S.D.N.Y. 2003) (adverse inference instruction insufficient where defendants and their counsel failed to meet discovery obligations for *years*, including by making repeated affirmative misrepresentations as to compliance with document demands, lying under oath at deposition about non-existence of documents, falsely reporting to court that witness was "getting on a plane" and could not attend court-ordered deposition, taking insufficient steps to preserve documents, and dismantling computers – without first giving notice to plaintiff's counsel – after "a year of protest by [plaintiff's] counsel that electronic documents had not been retained or produced, [multiple] court orders to preserve and retrieve electronic documents, and [plaintiff's] announcement that it might engage a forensic computer expert" to attempt to retrieve deleted material from those computers).

### B.      Plaintiff is Not Entitled to Default Judgment

> [The 2d Circuit] has expressed on numerous occasions its preference that litigation disputes be resolved on the merits, not by default. [It has] recognized that dismissal is a harsh remedy to be utilized only in extreme situations. Similarly, [it has] described default judgments as the most severe sanction which the court may apply.

*Marfia v. T.C. Ziraat Bankasi, N.Y. Branch*, 100 F.3d 243, 249 (2d Cir. 1996).

Even where an intent to deprive is found, courts are hesitant to dismiss an action or enter default judgment as a sanction for spoliation. *See, e.g., CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488 (S.D.N.Y. 2016) (cited by Plaintiff) (denying dismissal, adverse inference instruction, and broad preclusion order, despite "clear and convincing evidence" that plaintiff intentionally falsified ESI and attempted to destroy "authentic, competing information" to "gain an advantage in the litigation," because such sanctions "would unnecessarily hamper the plaintiffs

---

15. *See also* ECF No. 53, pp.9-15 and 19-23, and ECF No. 91, pp.13-20 and 22-25.

in advancing what might, in fact, be legitimate claims").[16]

G-Star and its counsel took a good faith approach to document preservation and to this litigation, undermining any claim that default judgment – *the most severe sanction which the court may apply*," *Marfia*, 100 F.3d at 249 (emphasis added) – is justified here. The cases Plaintiff contends support her request for default judgment involve egregious discovery violations and are completely inapposite to this case. *Compare* pp.1-16 *above*[17] *with* cases cited by Plaintiff, including *Metro. Opera*, 212 F.R.D. at 224-30 (years of serious discovery violations by defendants and their counsel, as discussed at p.18 *above*); *TLS Mgmt. & Mktg. Servs., LLC v. Mardis Fin. Servs., Inc.*, 2018 WL 3673090 (S.D. Miss. Jan. 29, 2018) (defendants did not produce a *single document* for *2 years*, deleted computer user profiles after plaintiff filed motion to compel forensic examination of computer records, began deleting hundreds of documents day after hearing on motion to compel, threw away a computer after motion to compel was granted, and permanently erased data on other computers days after plaintiff demanded that data be saved and after forensic examination had been scheduled); *Global Material Techs., Inc. v. Dazheng Metal Fibre Co. Ltd.*, 2016 WL 4765689 (N.D. Ill Sept. 13, 2016) (defendants destroyed computers during litigation, failed to search email accounts for 21 months after document demands were served and before accounts were shut down, lied about searches for evidence, lied that defendant-company did not have relationship with third-party company when this relationship was directly relevant to

---

16. *See also Neely v. Boeing Co.*, 2019 WL 1777680, at *4 (W.D. Wash. Apr. 23, 2019) (denying default judgment despite "notable" discrepancy in number of emails in PST file produced by defendant and PST file as of plaintiff's last day of work); *Mfg. Automation and Software Sys., Inc. v. Hughes*, 2018 WL 5914238, at *12-13 (C.D. Cal. Aug. 20, 2018) (denying dismissal where plaintiff "admitted it deleted information to prevent others from getting hold of it," email retention period was purposefully shortened to make evidence "harder for others to obtain," and "it [was] impossible to determine the actual 'scope' of the spoliation").

17. *See also* ECF No. 53, pp.9-15 and 19-22 and ECF No. 91, pp.13-20 and 22-24.

plaintiff's claims, and failed to comply with Rule 30(b)(6) obligations); *Miller v. Time-Warner Commc'ns, Inc.*, 1999 WL 739528 (S.D.N.Y. Sept. 22, 1999) (plaintiff "deliberately erased information from documents to prevent its discovery by defendant" and perjured herself when questioned about the erasures at her deposition and at a court hearing).

Finally, this Court should decline to enter default judgment because G-Star has numerous meritorious defenses to Plaintiff's claims. Overwhelming documentary evidence and deposition testimony (including Plaintiff's own testimony) establish that Plaintiff was an exempt employee not entitled to overtime pay. *See*, *e.g.*, Kundar Decl., Ex. J. Additionally, as will be shown on summary judgment, Plaintiff's claims of retaliation, harassment, and any other alleged discrimination cannot succeed on the undisputed facts (mostly Plaintiff's own testimony). For example, as to Plaintiff's discrimination in promotion claims, Plaintiff totally ignores that during the period she claims to have been denied a promotion to a sales position because of her Asian race and/or female gender, G-Star hired an Asian female for a *senior sales position*. Given the serious substantive weaknesses in her case, Plaintiff's pursuit of case-terminating sanctions appears to be no more than a zealous attempt to avoid determination of this case on the merits. Further, given that Plaintiff claims more than *$11 million* in damages in this action (including $10 million in punitive damages and $400,000 in compensatory damages, among other damages categories), it would be grossly inequitable to enter default judgment here.

### C.  Plaintiff is Not Entitled to an Order Striking G-Star's Answer or Affirmative Defenses

"Striking an answer, like dismissal or entry of default, is a drastic remedy generally to be used *only* when the district judge has considered lesser alternatives[.]" *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Group*, 328 F.R.D. 100, 119 (S.D.N.Y. 2018). As demonstrated above, this severe sanction is not warranted here. *See* pp.1-16 and 18-20 *above*.

### D.        Plaintiff is Not Entitled to a Preclusion Order

Plaintiff seeks to preclude G-Star from presenting evidence as to "the vast majority of issues and defenses" in this action. Pl. Br., p.23. "[B]ecause of the harshness of the sanction of preclusion, such a sanction has been held to be justified only in rare situations evincing culpable conduct by the party against whom the sanction is to be imposed." *Syntel*, 328 F.R.D. at 119 (alteration in original). "[B]efore precluding a party from introducing relevant evidence because of a discovery violation, a court should inquire more fully into the actual difficulties which the violation causes, and *must* consider less drastic responses." *Id.* (emphasis added).

Plaintiff seeks a preclusion order pursuant to Rule 37(e)(1). *See* Pl. Br., p.21. However, Plaintiff has not demonstrated *any* prejudice warranting Rule 37(e)(1) sanctions. *See* ECF No. 91, pp.20-22. As to Plaintiff's overtime claims, G-Star produced substantial evidence of Plaintiff's working hours throughout her employment with G-Star, including:

- More than 1,000 pages of Plaintiff's daily computer log-in records for the 2 desktop computers she used while employed by G-Star;
- Weekly attendance sheets reflecting Plaintiff's days in and out of the office, including for work-related travel, throughout her employment with G-Star;
- A list of Plaintiff's absences from work for vacations, sick days, and personal days;
- Work schedules requiring that Plaintiff perform work outside of normal business hours on specified dates in 2016;
- Nearly 130,000 pages of time-stamped emails in the Reconstruction.

Kundar Decl., ¶ 39. As to Plaintiff's NYSHRL and NYCHRL claims, G-Star produced pertinent documents throughout discovery.[18] Moreover, the depositions of 12 witnesses – *including Plaintiff* – were taken. Of those witnesses, all but 2 were current or former employees of G-Star or G-Star Raw C.V. The testimony of 3 of those witnesses was taken over 2 or 3 days. Additionally, 7

---

18. Interestingly, Plaintiff testified that *she* is not in possession of text messages forming the basis of her claims – including text messages specifically referenced in her Complaint – because her cell phone automatically deleted them after one year. Kundar Decl., Ex. A at 67-68.

witnesses (including G-Star's Rule 30(b)(6) witnesses) were current or former G-Star or G-Star
Raw C.V. employees who testified *after* the deletions were disclosed. These depositions yielded
thousands of pages of testimony pertinent to the claims and defenses in this action – including
testimony undermining Plaintiff's testimony. Plaintiff's rejection of discovery from other
employees' email files also undercuts any claim of prejudice. An inference can certainly be drawn
that Plaintiff anticipated that the evidence would not support her claims – and chose to instead take
her chances on a motion for severe spoliation sanctions under Rule 37(e).

*Even if* Plaintiff could establish prejudice (she cannot), a preclusion order as to "the vast
majority of issues and defenses" would effectively deprive G-Star of introducing any evidence to
defend itself against Plaintiff's claims in this action. It would be tantamount to a case-terminating
sanction only available under Rule 37(e)(2) and would thus be inappropriate under Rule 37(e)(1).

> Care must be taken … to ensure that curative measures under subdivision (e)(1) do
> not have the effect of measures that are permitted under subdivision (e)(2) only on
> a finding of intent to deprive another party of the lost information's use in the
> litigation. An example of an inappropriate (e)(1) measure might be an order striking
> pleadings related to, or *precluding a party from offering any evidence in support
> of, the central or only claim or defense in the case*.

Fed. R. Civ. P. 37 advisory committee note to 2015 amendment (emphasis added). The preclusion
order Plaintiff seeks is analogous to the Advisory Committee's example of an "inappropriate (e)(1)
measure," and should therefore be rejected by this Court.

Finally, as shown above, Plaintiff is not entitled to the preclusion order she seeks under
Rule 37(e)(2). *See* pp.1-16 and 18-20 *above*. Moreover, as will be shown on summary judgment,
G-Star has ample evidence to support its defenses. *See* p.18 *above*. The preclusion order Plaintiff
seeks would afford Plaintiff a colossal windfall of *$11 million* in damages and is completely
unjustified by the merits of this case. *See Scantibodies*, 2016 WL 11271874, at *34 (finding that
"it would be an unjust result for Defendant to avoid entirely [its] legal consequences" based on

plaintiff's discovery violations, particularly given that damages sought were "so substantial" that preclusion could "afford Defendant a very large windfall," and denying preclusion order).

The cases cited by Plaintiff also do not compel entry of the broad preclusion order she seeks. *Compare* pp.1-16 *above*[19] *with* cases cited by Plaintiff, including *CAT3*, 164 F. Supp. 3d at 498 (entering narrow preclusion order where defendant presented expert evidence of plaintiff's intentional "falsification of evidence and attempted destruction of authentic, competing information"); *Taylor v. City of N.Y.*, 293 F.R.D. 601 (S.D.N.Y. 2013) (applying *Residential Funding* (now superseded) and entering preclusion order based on negligent deletion of ESI); *In re WRT Energy Secs. Litig.*, 246 F.R.D. 185, 200-01 (S.D.N.Y. 2007) (entering limited preclusion order where plaintiffs evaded discovery and misled defendants as to nature of claims, but defendants' proposed preclusion order "would sweep too broadly"); *Jenkins v. Woody*, 2017 WL 362475 (E.D. Va. Jan. 21, 2017) (movant proved lost ESI could not be restored or replaced).[20]

## III.   MAGISTRATE JUDGE WANG PROPERLY CONSIDERED EVIDENCE AS TO G-STAR'S PRESERVATION EFFORTS

Plaintiff has shown no basis for this Court to disregard evidence as to G-Star's preservation efforts, as set forth in the Kundar Decl. The Kundar Decl. contains quotes and descriptions of correspondence with G-Star as to its discovery obligations; it was properly considered in the RR, and should be considered by this Court. Indeed, the Kundar Decl. was made under penalty of perjury pursuant to 28 U.S.C. § 1746. *See* Kundar Decl., pp.1, 13. The correspondence itself was

---

19. *See also* ECF No. 53, pp.9-21 and 22-23 and ECF No. 91, pp.13-25.

20. Plaintiff also inaccurately quotes *Lokai* and misleadingly omits limiting language included by the Court. *See* Pl. Br., p.22. Contra Plaintiff, *Lokai* precluded the defendants "from offering testimony at trial as to the content of any <u>unpreserved</u> emails <u>(unless duplicate copies of those emails have otherwise been obtained by any party),</u> including any testimony suggesting that such emails would have supported any elements of their defenses or counterclaims." *Lokai*, 2018 WL 1512055, at *17 (emphasis added to identify language omitted by Plaintiff).

not annexed to the Kundar Decl. because, among other things, it contains information probative of

G-Star's case strategy, including lists of documents that G-Star believes to be relevant to this case.

Just because Plaintiff filed a spoliation motion does not mean that all attorney-client

communications must be disclosed to Plaintiff. *See Pearlstein v. BlackBerry Ltd.*, 2019 WL

1259382, at *18-19 (S.D.N.Y. Mar. 19, 2019) (denying motion to compel production of litigation

hold notices "protected both by the attorney-client privilege and work product doctrine"). Thus,

Plaintiff has shown no basis for this Court to disregard the Kundar Decl.

## IV.   MAGISTRATE JUDGE WANG PROPERLY CREDITED EVIDENCE THAT THE EMAIL FILE WAS DELETED ON MARCH 6, 2017

ICT in Amsterdam initially reported that the Email File was deleted on June 3, 2017

because the deletion log read "03/06/2017" – which was assumed to be written in the European

style (day/month/year – *i.e.*, June 3, 2017). van der Bent Decl., ¶ 9; *see* 2d van der Bent Decl., Ex.

2 (deletion log). While preparing the van der Bent Decl. in late October 2018, Mr. van der Bent

checked the date and realized that June 3, 2017 was a Saturday. van der Bent Decl., ¶ 9. He knew

the deletion would not have occurred on a Saturday because email account deletions must be done

manually. *Id.* It only then dawned on Mr. van der Bent that the deletion log listed the "03/06/2017"

date in the American style (month/day/year – *i.e.*, March 6, 2017) because Plaintiff worked in New

York. *Id.* Mr. van der Bent explained his mix-up in the van der Bent Decl., noting his responsibility

for email operations in more than 20 countries, and declared "under penalty of perjury under the

laws of the United States of America that the foregoing is true and correct." *See id.* at p.5.

On August 2, 2018, Ms. Kundar represented to Plaintiff's counsel and to Magistrate Judge

Wang that the Email File was deleted on June 3, 2017 based on information that had, as of then,

been provided by ICT. Kundar Decl., ¶¶ 29, 36.When Mr. van der Bent found this information to

be incorrect in connection with his preparation of the van der Bent Decl., he took immediate steps

to include the correct date of deletion in the van der Bent Decl. G-Star is not trying to "change its story," as claimed by Plaintiff; rather, G-Star and its counsel are complying with their ethical obligations to correct the incorrect information inadvertently provided to Plaintiff's counsel and the Court. While Plaintiff tries to ascribe a negative motive to Mr. van der Bent's sworn correction, she presents zero evidence of nefarious intent. Plaintiff's mere conjecture cannot be credited.

* * * * *

Plaintiff's limited objections to the RR are just the latest example of Plaintiff's strategy of going on the offensive when she knows that she cannot defend. Plaintiff employed this strategy when she filed her "First Complaint" just *5 days* after her failure to ensure the timely entry of the $250,000 Order was discovered. *See* timeline at p.4 *above*. Now, Plaintiff seeks to sidestep the weaknesses in the RR – and in her own case – by trying to exclude evidence unfavorable to her and by seeking case-dispositive spoliation sanctions where no sanctions are warranted at all. The bravado of Plaintiff's "limited objections" does not camouflage the fatal errors in the RR and in Plaintiff's case. Plaintiff's objections are totally without merit. This Court should credit G-Star's objections (*see* ECF Nos. 91-93) and refuse to enter any sanctions whatsoever.

## CONCLUSION

For these reasons, G-Star respectfully requests that this Court enter an Order rejecting Plaintiff's objections to the RR, finding that Rule 37(e)'s requirements have not been met here, declining to sanction G-Star, and awarding G-Star any such other and further relief as this Court may deem just and proper, including its reasonable attorneys' fees.

Dated: August 9, 2019                       Fox Horan & Camerini LLP
       New York, New York              By: /s/ Kathleen M. Kundar
                                        Kathleen M. Kundar